JOHN J. ELLIOTT AND POLLY ELLIOTT v. Z. BOOTH AND B. C. H. JOHNSON.

1. DISCHARGE IN BANKRUPTCY—LIEN.—A discharge in bankruptcy does not release a lien created prior to the proceedings in bankruptcy.
2. JURISDICTION.—The State courts have jurisdiction after a bankrupt's discharge to enforce a vendor's lien upon land sold by the bankrupt before the proceedings in bankruptcy began, and against a purchaser with notice.
3. CASES OVERRULED.—(Taylor *v.* Bonner, 38 Tex., 531; Johnson *v.* Pogue, 39 Tex., 92.)

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

Suit brought by appellant against the defendant, Z. Booth, June 23, 1870, to foreclose the vendor's lien for the purchase-money held by the appellant, as administrator of Polly Elliott, upon a certain tract of land described in the petition which, in the lifetime of the intestate, had been sold by her to said Booth.

The defendant, Booth, on the 22d day of November, 1870, filed a general denial, general demurrer, and pleaded his discharge in bankruptcy from all debts which were provable on the 29th of December, 1868.

The appellant then filed, March 12, 1871, an amended petition making the defendant, B. C. H. Johnson a party defendant, alleging in substance that the defendant, Booth, had, before going into bankruptcy, sold to defendant Johnson the land in dispute; that he had taken from Johnson

an obligation to pay the debt to appellant's intestate; that he had demanded this paper, but it was refused him, and that it was held either by Booth or Johnson; that they had confederated together to deprive plaintiff of his rights, and that Booth had not in his schedules in bankruptcy either returned the vendor's lien on the land held by Polly Elliott or the obligation of Johnson, and he prayed that he have judgment against Booth establishing the debt, but waiving any personal judgment against him, and also that he have judgment against Johnson, the vendee of Booth, for foreclosure of the lien upon land for the purchase-money shown to be due and unpaid.

The defendant Johnson, on the 2d of August, 1871, filed a general exception to the amended petition, and also several special exceptions.

1. Because the petition did not show any privity in the contract between Booth and Johnson in the agreement for the latter to pay the remainder of the purchase-money.

2. That the only remedy against the land was against Booth or his assignee in the bankrupt court for failing to return the obligation of Johnson on his schedule in bankruptcy.

3. That if there was any remedy it was in the United States court in bankruptcy and not in the State court.

He also filed a general denial of the allegations of the petition.

An amended petition was filed by the plaintiff April 5, 1872, setting forth the obligation between Booth and Johnson, to wit, that the latter was bound to pay the remainder of the purchase-money on the land.

At the May Term, 1873, the demurrers of the defendant Johnson were submitted to the court and overruled. Thereupon the cause was submitted to the jury upon special issues, who found thereon as follows:

1. The amount of the debt for purchase-money due to be $1,205.76.

2. The note was executed, etc., as set out in the petition.

3. That it was given for the purchase-money of the land described.

4. That Johnson had notice when he bought the land, and that the purchase-money was not paid; and

5. That Booth was discharged in bankruptcy December 9, 1869.

Upon this finding the court rendered judgment against the plaintiff, decreeing costs against the estate of Polly Elliott.

Motion for a new trial was made, and also motion to reform judgment on the finding of the jury, which were overruled. The plaintiff appealed, and assigned as error the rendering of judgment for defendants and the refusal of the court to grant motion for new trial and to reform judgment.

*James H. Jones*, for appellant, cited the following authorities: Bump on Bankruptcy, 3d ed., p. 79; Bankrupt Law, sec. 33; Bump's Law Practice of Bankruptcy, 3d ed., 392; Stoddard v. Locke, 5 American Rep., 310; Bentley v. Wells, 14 Id., 54; Cole v. Duncan, 58 Illinois, 176; 1 Story's Eq., 4 ed., sec. 351.

*Walton, Green & Hill*, also for appellant, filed a lengthy brief, in which they based their right to a reversal of the judgment on the following authorities: Bates v. Tappan, 3 B. R., 159; S. C. 99 Mass., 376; Bowman v. Harding, 4 B. R., 5; 56 Me., 559; Samson v. Burton et al., 4 B. R., 1; Leighton v. Kelsey et al., 4 B. R., 155; 57 Me., 85; Perry v. Somerly, 57 Me., 552; Stoddard v. Locke, 43 Vt., 574; Daggett v. Cook, 37 Conn., 341; Baum v. Stern, 1 S. C., (Richardson;) Beardsley v. Hall, 36 Conn., 276–277; Claffin v. Crogan, 38 N. H., 411; Jones v. Lellyett & Smith, 39 Ga., 64; Stoddard v. Locke, 43 Vt., 574, (reported in 5 Am. R.;) Pick et al. v. Jenness, 7 How., 612; Bowman v. Harding, 56 Maine; Kittredge v. Warren, 14 N.

H., 509; Leighton *v.* Kelsey, 57 Maine, 85; Addison & Calhoun *v.* Crow & Jarvis, 5 Dana, (Ky.,) 276; Seymour *v.* Browning, 17 Ohio, 362; McLean, Assignee, *v.* Rockey, 3 McLean's Reports, C. C., 235.

*Steadman & Bagley*, for appellee.

*Baldwin S. Moore*, for appellee.

In this case five special issues were submitted to the jury, to which they in substance answered that the amount of the note, principal and interest, was $1,205.76; that said note was made, executed, and delivered as described in the petition; that said note was given to secure the purchase-money for the land described in the petition; that Johnson when he purchased had notice that the purchase-money from Booth to Elliott had not been paid; that Booth had been discharged in bankruptcy on the 9th day of December, 1869.

There was testimony introduced tending to show that Booth failed to report both Elliott's debts and the land upon which plaintiff claimed he had a vendor's lien in his schedules; but the evidence on this point was conflicting and inadmissible, because a certified copy of the transcript of the records of the bankrupt court would have been the only proper way to have proved the omissions in the schedule, as the predicate for the introduction of secondary evidence had not been established. This testimony, however, cuts no figure in the case, as no issue as to its truthfulness was submitted to the jury, and the failure to do so is not assigned as error.

Admitting in this connection, for argument's sake, that as a general proposition it may be true that a discharge in bankruptcy is no bar to a proceeding *in rem* in our State courts, yet nevertheless, in this case, the judgment to have conformed to the verdict must have been rendered for the defendants. A brief consideration of the nature of the vendor's lien will show this.

The vendor's lien is a creature of equity, and its enforcement is governed by the rules and maxims of equity. It is a favor which equity extends to the vendor in addition to his legal remedy against the vendee. It is not an absolute but a suspended charge upon the land, and continues, if not waived by express or implied agreement, so long as any of the purchase-money remains unpaid, even where the land has passed to a purchaser for value but with notice. The debt, however, is the principal, the lien merely an incident. If the debt is released, extinguished, or barred the lien no longer exists. The vendee is primarily bound, the land secondarily. As " equity does not grant relief where there may be relief at law," the best authorities hold that the vendor must first obtain his judgment at law and exhaust his legal remedy, or aver and prove such facts as show that he cannot have a full, complete, and adequate remedy at law, before equity will aid him. It is true that with us legal and equitable relief may be granted in one suit, but still there exists the same necessity to aver and prove the equities as in a chancery proceeding in England.

Now, though it is true that the discharge of Booth establishes the fact that nothing can now be made out of the vendee, and if this was all that it established a judgment foreclosing the lien might have been properly rendered, but the discharge extinguishes the debt, as the debt was a provable one, and being extinguished, the lien, which is but an incident of debt, is also at an end. This being true, a judgment *in rem* could not be rendered.

Again: the discharge is conclusive of this, that all was done that is required by the bankrupt law to be done to entitle a party to a discharge. Section 11 requires the bankrupt to report a sworn schedule of all his debts, the nature of the same, and the residence of his creditors. It must therefore be presumed that the debt due Elliott was reported, and that Elliott had notice of the proceeding in bankruptcy against Booth, and that if he did not prove up his debt

against bankrupt's estate, he either willfully or negligently disregarded the invitation of the bankrupt court to come forward and foreclose his vendor's lien. His failure or refusal to resort to the bankrupt court to foreclose his lien operated as an injury to Johnson, for if Elliott had done so then Johnson would have been subrogated to Elliott's personal demand against Booth. Consequently the plaintiff is not in court with clean hands, and cannot hope for equitable relief. He that asks equity must do equity. But Elliott has not offered to relieve the land by so much as the estate might have reimbursed Johnson, and therefore he is not entitled to a judgment *in rem.*

But as the bankrupt court had jurisdiction, is not the discharge a bar to judgment *in rem* as well as a judgment *in personam?*

The filing of the petition transfers to the United States District Court jurisdiction over the bankrupt, his estate, and all parties and questions connected therewith. (Jones *v.* Leach, 1 B. R., 165.)

Parties will be enjoined from resorting to the aid of a State court pending proceedings, and are liable to be proceeded against for contempt. (Bump, 286.) The sale of property by a sheriff, under execution issued from a State court, upon a levy made after the petition in bankruptcy was filed, has been enjoined. (Jones *v.* Leach, 1 B. R., 165.) So a libel *in rem* brought to enforce a lien against a vessel. (*In re* Peoples' Mail Steamship Company, 2 B. R., 170.)

Davis *v.* Anderson, 6 B. R., 146, in effect decided that as the bankrupt court has jurisdiction over the debtor and all his creditors, and also over all the demands affecting the bankrupt's estate, the secured creditor must prove his demand and obtain the aid of the bankrupt court, and cannot so act until bankruptcy proceedings are closed, and then enforce his lien in a State court. (See also Bump, 433.)

It is not necessary to cite other authorities on this point,

as the court will, if appellant succeed, have to overrule Taylor v. Bonnett, 38 Tex., 521, and Johnson v. Poag, 39 Tex., 92.

REEVES, ASSOCIATE JUSTICE.—The appellees contend that Booth's discharge. in bankruptcy satisfied or extinguished the debt due from him to Elliott, and that the vendor's lien, which was but an incident to the debt, was thereby extinguished.

The tract of land on which the lien is claimed was sold and conveyed by William Elliott and wife to Z. Booth on the 28th day of December, 1866. The note on which the suit was brought bears the same date, is payable to William Elliott or bearer, and was given for the balance of the purchase-money on the land. The original petition was filed June 23, 1870, about six months after Booth was discharged in bankruptcy.

Booth demurred to the petition and pleaded his certificate of discharge.

The plaintiff, by a supplemental petition, alleged the sale and conveyance of the land by Booth to B. C. H. Johnson on January 26, 1867, and averred that Johnson had agreed and bound himself in writing to pay Booth's note to Elliott. The alleged agreement was set out in the petition, but not offered in evidence on the trial. Johnson is charged with notice that the note for the purchase-money was unpaid, and a lien on the land at the time of his purchase from Booth. The plaintiff, in his petition, admitted the discharge of Booth, but averred that Booth was not the owner of the land at the time he made his application for bankruptcy, and charged that he had not reported the land as any part of his estate to the bankrupt court, and that he had also failed to report Johnson's obligation to pay the note sued on.

Johnson answered by a general demurrer, and specially that the plaintiff's remedy was against Booth or his as-

signee, or against him, Johnson, in the bankrupt court, denying the jurisdiction of the State court, and by a separate plea denied the allegations of the plaintiff's petition.

The demurrer being overruled, the cause was submitted to a jury, under instructions from the court to return a special verdict. The jury returned the following verdict on the special issues submitted by the court:

1. We, the jury, find the amount of the note described in the petition, principal and interest to May 7, 1873, twelve hundred and five dollars and seventy-six cents.

2. We, the jury, find that said note was executed and delivered and promised to be paid as described in said petition.

3. We, the jury, find that said note was given to secure the purchase-money for the land described in the petition.

4. We, the jury, find that Johnson did have notice when he purchased said land that the purchase-money from Booth to Elliott was not paid.

5. We, the jury, find that Booth was discharged in bankruptcy on the 9th day of December, 1869.

The judgment of the court on the verdict was for the defendants; and the plaintiff's motion to render judgment for him and his motion for a new trial being overruled, he appealed.

The discharge of Booth in bankruptcy, and which the plaintiff admitted, was a protection as to Booth. The effect of the discharge on Elliott's lien is the only question in the case.

A discharge in bankruptcy, with certain exceptions, releases the bankrupt from all debts and liabilities which were or might have been proved against his estate. It does not, however, release any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety, or otherwise.

Under this provision of the bankrupt act (sec. 33) it has been held that a creditor may sue any one liable for the

same debt, and that the suit is not affected by the bankruptcy proceeding. (*In re* Levy *et al.*, 1 B. R., 66; Payne *et al. v.* Able, 4 B. R., 67; Citizens' National Bank *v.* Leming *et al.*, 8 I. R. R., 282.)

It clearly appears that the discharge is limited in its effect to the bankrupt, and that it cannot avail as a defense to another who may be bound with him for the debt.

It is urged by appellee Johnson that if Elliott had foreclosed his lien in the bankrupt court that he, Johnson, would have been subrogated to Elliott's rights against Booth, and might have protected himself out of Booth's estate. The failure of Elliott to proceed against Booth in the bankrupt court did not prevent Johnson from doing so. Johnson by paying the debt would have stood in the place of Elliott, and might have enforced all his remedies against Booth.

The appellees further contend that the bankrupt court having acquired jurisdiction over Booth and his estate, and all persons and questions connected with it, and as Elliott failed to enforce his lien in that court either against Booth or his assignee, that the discharge of Booth was a bar to a proceeding *in rem* to enforce the lien on the land.

Appellees refer to the case of Jones *v.* Leach *et al.*, 1 B. R., 165, and the case of Davis *v.* Anderson, 6 B. R., 146, in support of the jurisdiction of the bankrupt court. In the case of Jones *v.* Leach, the bankrupt proceedings were pending when the case was decided. An execution from a State court had been issued after the petition in bankruptcy was filed, and which was enjoined until the question of the bankruptcy was disposed of by the bankrupt court. In Davis *v.* Anderson the court said a secured creditor must prove his demand and obtain the aid of the bankrupt court, and cannot wait until the bankruptcy proceedings are closed and then enforce his lien through the State courts. In this case a judgment had been rendered against the bankrupt before his bankruptcy, and execution had been issued after his petition had been filed and the suit was brought by the

assignee against the purchaser. The court said a sale of the debtor's land by virtue of an execution issued and levied after the filing of the petition in bankruptcy will not pass the title of the land as against the assignee, although the judgment was entered and the lien created prior to the bankruptcy.

In the case at bar there are no questions to be settled with the assignee. The assignee is not a party to the suit. The bankruptcy has been closed, at least a discharge has been granted. The other creditors are not interested in the result of this suit. Booth having conveyed the land on which the lien is claimed to Johnson about one year and eleven months before he filed his petition for adjudication in bankruptcy, he had no interest in the property at that time. The property was never reported to the bankrupt court as any part of his estate, and the bankrupt court never had any jurisdiction over it, as Booth had parted with his title long before the court had acquired jurisdiction over him or his estate or his creditors, and which was not questioned by the assignee or any other party pending the proceedings in bankruptcy. As between Booth and Johnson there may have been a question of indebtedness growing out of Johnson's purchase from Booth, in which Booth's other creditors or his assignee may have been interested. But that question is foreign to the present inquiry, and cannot affect Elliott or his right to enfore the lien if it has not been lost in some other way.

If the cases of Taylor *v.* Bonnett, 38 Tex., 521, and Johnson *v.* Poag, 39 Tex., 92, overruling Garner *v.* Smith, are to be taken as deciding that the State courts can in no case enforce a lien after an adjudication in bankruptcy, the decision is not in harmony with the current of authority on this question.

In the case of Jones *v.* Lellyett and Smith, 39 Ga., 64, it was held that a creditor having a judgment lien may enforce it upon property purchased from a bankrupt after the judg-

ment was rendered and before the filing of his petition for bankruptcy, when the judgment and the property had not been before the bankrupt court for adjudication. Also, Truitt *et al. v.* Truitt, 38 Ind., (Black,) 16, 26, 27. In this case the court said : "A discharge in bankruptcy does not release a mortgage or other lien on property created prior to the commencement of proceedings, nor prevent the enforcement of the lien."

A lien created by the levy of an attachment from a State court more than four months prior to the commencement of the proceedings in bankruptcy does not oust the State court of jurisdiction to enforce the lien by a sale of the property, although a discharge has been granted. (Bates *v.* Tappan, 3 B. R., 159 ; 99 Mass., 376 ; Bowman *v.* Harding, 4 B. R., 5 ; Leighton *v.* Kelsey *et al.*, 4 R. R., 155 ; Vaillant, Lessee, *v.* Childress, 21 Wall., 643.)

In Vaillant *v.* Childress, the court said : " Where the power of a State court to proceed in a suit is subject to be impeached, it cannot be done except upon an intervention by the assignee, who shall state the facts and make the proof necessary to terminate such jurisdiction. This rule obtains, whether the four-months' principle is applicable or whether it is not applicable." This case was not published when the cases of Taylor *v.* Bonnett (38 Tex.) and Johnson *v.* Poag (39 Tex.) were decided.

The cases here referred to are judgment liens, attachment liens, and mortgage liens. The case at bar is a vendor's lien, and unless there is some distinction in this respect between the cases the rule of construction should be the same.

The bankrupt act recognizes mortgages and liens generally on real or personal property by providing for the payment of the balance of the debt after deducting the value of the property. (Sec. 20.)

A vendor's lien for the purchase-money attaches to the land and follows it into the hands of a subsequent purchaser

with notice. (Briscoe v. Bronaugh, 1 Tex., 326; Neel v. Prickett, 12 Tex., 138; McAlpin v. Burnett, 19 Tex., 497.)

The bankrupt law does not discriminate between liens of different kinds, and certainly it does not discriminate against a vendor's lien, but protects it as other liens are protected. When the property is sold by the assignee, the purchaser takes it subject to the lien, and acquires no better right than the bankrupt has. (*In re* Nebane, 3 B. R., 91; *In re* McClellan, 1 B. R., 91; Kelley v. Strange, 3 B. R., 2.)

It clearly appeared from the evidence on the trial of this cause that the note on which the suit was brought was given in part payment for the land sold by Elliott to Booth before his bankruptcy, and that Johnson had actual notice that the note was unpaid, and that Elliott had a lien on the land when he, Johnson, purchased from Booth, and that this was prior to the bankruptcy. It further appeared that the land was never reported to the bankrupt court for adjudication, and that Booth was discharged in bankruptcy before the institution of the suit. The verdict of the jury was in accordance with the evidence. The amount of the note, principal and interest to May 7, 1873, the time of the trial, as found by the jury, was $1,205.76.

We are of opinion that the court erred in rendering judgment on the special verdict for the defendants. The judgment should have been entered for appellant for the sum found by the jury to be enforced against the land, but not to be enforced as a personal judgment against Booth nor Johnson, or any other property. (See Vaillant, Lessee, v. Childress, 21 Wall., 643.)

The judgment is reversed, and judgment is here rendered for appellant on the special verdict of the jury in accordance with this opinion as should have been done by the District Court.

Judgment reversed and rendered.

REVERSED AND RENDERED.