F. HICKCOCK'S SONS ET AL. v. JANE F. BELL.

WRIT OF ERROR BOND — BANKRUPTCY — AFFIRMANCE ON CERTIFICATE.—A citation in error was served, on the 18th day of October, 1876; the plaintiffs in error were adjudged bankrupts, on the 18th of January, 1877; the transcript not being filed, a judgment of affirmance was rendered, on certificate, on February 13, 1877, on motion of defendant in error, made January 30, 1877; the assignment of causes, to which the writ of error was returnable, began on the 29th of January, 1877; an assignee of bankruptcy of plaintiffs in error was appointed February 17, 1877. On the 16th of March, 1877, a motion was filed by the sureties of the plaintiffs in error on

their error bond alone, to set aside the judgment of affirmance, upon the ground that their principals had been adjudged bankrupts after the citation in error had been served, and before the judgment of affirmance was rendered : *Held*—

1. In order to suspend the enforcement of a judgment in the District Court until it can be examined in the Supreme Court, the sureties upon the writ of error bond, in effect, under the statutes of Texas, make themselves parties, jointly with the plaintiff in error, and liable to a judgment against them, in conjunction with the plaintiff in error, for the amount that may be adjudged against him in the Supreme Court.

2. The writ of error bond, required by statutes, (Paschal's Dig., art. 1495,) has, by its terms, the force of a judgment against the sureties, and when, on it, a judgment is rendered, in the Supreme Court, against the sureties, it relates back and operates as a lien upon the land of all the obligors from the date of the bond, as any other judgment would, of that date.

3. The permission given the sureties, by statute, (Paschal's Dig., art. 4625,) to institute proceedings within one year from the forfeiture of the bond, for any cause that should defeat or modify a recovery on the bond, does not relate to a motion in the Supreme Court alone, but was designed to embrace any suit or proceeding that might be necessary.

4. That a person adjudged bankrupt is *civiliter mortuus*, is true, only in a qualified sense. Until an assignee is appointed to represent him, he may do whatever is necessary to protect his interest in a suit then pending.

5. Had the plaintiffs in error, or the sureties, filed a transcript of the record at the proper time, and, on a suggestion of bankruptcy made, shown that the plaintiffs in error had been adjudged bankrupts, the trial of the cause would have proceeded to judgment against the sureties, if no error was found in the record, and further proceedings would have been stayed against the bankrupts alone.

6. Bankruptcy confers a personal privilege; the suggestion of bankruptcy is one to be made by the bankrupt, and the bankrupts in this case, not having appeared and asked to set aside the judgment rendered as against them, no stay of proceedings against them will be ordered.

7. According to the laws of this State, a judgment was legally rendered against the plaintiffs in error, without violating any provision of the Federal bankrupt law; the rendition of said judgment works a forfeiture of the writ of error bond, and gives it the force and effect of a judgment against the sureties who filed the motion.

ERROR from Galveston county, upon a certificate.

The character of the motion to set aside the judgment rendered in this case is stated in the opinion.

No briefs of counsel on either side have been received by the reporters.

ROBERTS, CHIEF JUSTICE.—This is a motion by the sureties of plaintiffs in error, upon their error bond, to set aside the judgment of affirmance rendered at this term, upon a certificate, upon the ground that their principals had been adjudged bankrupts after the citation in error had been served, and before said judgment of affirmance was rendered.

The citation in error was served on the 18th of October, 1876. The plaintiffs in error were adjudged bankrupts, as appears by certificate of the clerk of the District Court of the United States at Galveston, on the 18th of January, 1877. The transcript in said cause not having been filed, a judgment of affirmance, upon certificate, was rendered on the 13th of February, 1877, upon motion of defendant in error, made on the 30th of January, 1877.

The assignment of causes of this term, to which said writ of error was returnable, commenced on the 29th of January, 1877. The assignee in bankruptcy of plaintiffs in error was appointed on the 17th day of February, 1877.

This motion was filed on the 16th of March, 1877, and in support of it the position is assumed in argument, that, if it had come to the knowledge of this court before the judgment of affirmance was rendered, as it is now made known, upon the application of the sureties, by the certificate of the clerk of the District Court of the United States at Galveston, that plaintiffs in error had been adjudged bankrupts, the judgment of affirmance upon the certificate would not have been rendered, and that, therefore, upon this motion made by the sureties alone at the same term by the sureties the judgment should be set aside as to them.

We are not prepared to sanction this proposition. The object of a writ of error is to show that there have been such errors in the proceedings of the District Court in the trial of the cause, as that the judgment rendered therein should not be enforced. In order to suspend its enforcement until it can be examined in the Supreme Court, the sureties upon the writ of error bond, in effect, under our statute, make themselves parties jointly with the plaintiff in error, and liable to a judgment against them in conjunction with the plaintiff in error, for the amount that may be adjudged against him in the Supreme Court.

A writ of error is treated in this State as a continuation of and as one of the modes of continuing the proceedings in a suit, in which a final judgment has been rendered, similar to the proceeding by appeal, and not a new suit. To supersede the judgment therein rendered in the District Court, the plaintiff in error is required to give his " obligation, with good and sufficient security, to be approved by the clerk, payable to the adverse party, in a sum equal to double the value or amount of the judgment, order, or decree, upon which the writ of error is obtained, conditioned that the party obtaining such writ shall comply with the judgment, order, or decree of the Supreme Court upon such writ, and well and truly pay all such damages as may be awarded against him; which bond shall have the force and effect of a judgment against all the obligors, upon which execution may issue, in case of forfeiture." (Paschal's Dig., art. 1495.)

The legal effect of a bond, which is declared by statute to have the force and effect of a judgment, has often been decided by this court to bind the sureties on the bond, as co-obligors with the plaintiff in error, and liable to have judgment rendered against them by the Supreme Court, when the cause is adjudged against him; and when so rendered, it relates back and operates as a lien upon the land of all the obligors from the date of the bond, the same as any other judgment of that date. This judgment is rendered in the

Supreme Court against the obligors in the bond, without any further notice to the sureties, than that which they have by entering themselves as parties in the proceedings in the act of executing the bond.

Lest there should some injustice result from this course of proceeding, it is provided by our statute, that "the obligors, or any one or more of them, whose name or names appear to any statutory bond, concerning which it is or shall be provided by law, that it is to be or shall become a judgment, or have the effect thereof, shall have one year, next after the actual or ostensible forfeiture of the same, to move the proper court to quash said bond, or otherwise to move for and have an issue or issues, and a jury to try the same, or any other matter of fact which, on a regular action on such bond, might properly defeat or modify a recovery thereon against such obligor or obligors." (Paschal's Dig., art. 4625.)

These two statutes have been considered together, and the latter has been regarded as furnishing remedies in which issues of law may be presented to the court, or issues of fact may be tried by a jury, in order to correct any error or injustice that may have been committed, to the prejudice of the obligors, in the rendition of the judgment under the former statute. It has been held that said remedies are not confined to a mere motion in the Supreme Court, but although a motion is mentioned, it was evidently designed to embrace any suit or proceeding that might be necessary under the circumstances of the case.

In support of the views here presented in the construction of these statutes, and the effect given to such bonds, in reference to the legal obligation of sureties thereon, the following decisions of this court may be referred to: Janes *v*. Reynolds, 2 Tex., 251, 255; Perry *v*. Gregory *et al.*, 13 Tex., 328; Robertson *v*. Morer, 25 Tex., 442; Berry *v*. Shuler, 25 Tex. Supp., 140. The same effect is given by statute to sequestration bonds and injunction bonds, but not to attachment bonds, replevy bonds, and claim bonds, which are given to secure

the redelivery of property, and are not declared to have the force and effect of a judgment. (Paschal's Dig., arts. 150, 3778, 3779, 3936, 3938, 5100, 5101; Testard v. Neilson, 20 Tex., 139.)

The ground upon which it is contended that this motion should prevail is, not because there is anything apparent in the record that vitiates the judgment which has been rendered in the Supreme Court, but because of the extraneous fact, that the original defendants in the District Court, the plaintiffs in error, were adjudged bankrupts after the writ of error had been taken and the citation therein served, and before the return day of said writ, and before said judgment was rendered in the Supreme Court against them and their sureties on the writ of error bond. That persons adjudged bankrupts are dead in law, (*civiliter mortuus,*) is true only in a qualified sense. Until an assignee is appointed to represent them, they may do what may be necessary to protect their interests in a suit then pending, in whatever stage it may be. "The bankrupt may continue to prosecute a pending action until the assignee is appointed and an assignment made to him, for he holds the title, and there is no one to take his place until that time." (Bump, 7th ed., 128, citing Sutherland v. Davis, 42 Ind., 26.)

The plaintiffs in error could have procured and filed a transcript of the record at the proper time in the Supreme Court, and they should have done so if they desired to have the judgment against them reversed. And so should the sureties have had it filed, if they desired to be relieved from their joint responsibility as obligors in the writ of error bond.

Had they filed the transcript, and had the plaintiff in error appeared and moved for a stay in the proceedings, upon a suggestion of their bankrupcy, supported by the evidence of the adjudication such as that which was produced on the hearing of this motion, the question would have been then presented, whether the obligors in the bond for writ of error occupied the position, under our statute, of joint con-

tractors, subject only to the condition that there should be found no error in the judgment of the District Court; and upon it being determined that such is their position, the trial of the cause would have proceeded to judgment against the obligors in the Supreme Court, if no error was found in the record, and further proceeding might have been stayed against the bankrupts, but not against the others, to await his effort to obtain a discharge of his liability on the joint obligation. (Bump, 7th ed., 164, 600, and cases cited; Tinkurs v. O'Neal, 5 Nev., 93.)

"Proceedings in the Appellate Court will not be stayed when the defendant appeals, and then becomes bankrupt." (Bump, 7th ed., notes, 603, citing 39 Cal., 559.)

The defendant in error had a right to procure and file a transcript of the record at the time the writ of error was returnable, and it would have stood as a case regularly in the Supreme Court, if there was a failure on the part of the plaintiffs in error to file it. The court could have proceeded to adjudge the case on that transcript, the same as if it had been filed by the plaintiffs in error. Neither party having filed the transcript of the record at the proper time, the defendant in error still had the right to procure and file, at the same term in the Supreme Court, a certificate under the statute, and ask an affirmance of the judgment, without reference to the merits; and the certificate being accompanied by a copy of the writ of error bond, judgment must have been rendered against all of the obligors in the bond. (Paschal's Dig., art. 1589.) The certificate being regular in form and substance, the court would have rendered a judgment against the obligors in the bond, although the plaintiffs in error had appeared and suggested their bankruptcy; and the most that they could have required, would have been to have execution stayed as to them, to await their endeavor to procure a discharge in bankruptcy. It does not follow, however, that the sureties on the bond could have procured the stay for themselves, for they were responsible for the amount of the judgment, should

it be affirmed, as joint obligors, according to the construction placed upon the law under which the bond was given. They had no right to procure the stay for the plaintiffs in error, because bankruptcy confers a personal privilege, of which the party so adjudged can avail himself or not, at his own discretion, either in procuring a stay of proceedings against him, or a discharge from liability.

It has been held, that "the suggestion of bankruptcy is one to be made by the bankrupt." The continuance by the bankrupt law is to be granted "upon the application of the bankrupt." (Bump, note 601, citing Palmer *v.* Merrill, 57 Me., 26.)

"It is not the duty of the court to stay proceedings, upon being advised that the debtor has filed his petition in bankruptcy, whether asked to do so or not." (Id., 602, citing Dunbar *v.* Baker, 104 Mass., 211; sec. 5106 of the Bankrupt Law.)

Notwithstanding the defendant's bankruptcy, a valid judgment can be rendered against him, unless he avails himself of the proceedings in bankruptcy. (26 Me., 57.)

The operation of the bankrupt law is, not to render illegal such proceedings in the State courts as are necessary to obtain a judgment, when not resisted by the party adjudged a bankrupt, but to render illegal any interference by legal process from State courts, with the property properly assigned or assignable, and therefore, under the charge of the bankrupt court for disposition, according to the terms of the bankrupt law. (Bump, 7th ed., 188–190.)

In this case, the plaintiffs in error did not appear and object to the judgment as rendered, nor have they appeared in this motion to set it aside, and therefore no stay of further proceedings against them, under the judgment, should be ordered. Should an execution issue upon the judgment that has been rendered, and should any of their property be levied on, that has been or may be assigned, that will present a different question, not necessary to be decided by this court.

It is only necessary now for this court to determine on this motion, that, according to the laws of this State, a judgment has been legally rendered against the plaintiffs in error, without violating any provision of the bankrupt law of the United States, and that the rendition of such judgment against them, as, it has been held by this court, works a forfeiture of the writ of error bond, and gives it the force and effect of a judgment, as it is entered in this case against the sureties, who have made this motion.

" The judgment of this court, affirming the judgment of the District Court, is the declaration of the forfeiture of the bond." (Robertson *v.* Moorer, 25 Tex., 442.)

The motion is overruled.

MOTION OVERRULED.