MECHANICS'—AMERICAN NAT. BANK OF ST. LOUIS v. NEW ENGLAND EQUITABLE INS. CO. et al. (No. 246–3443.)

(Commission of Appeals of Texas, Section A. Nov. 30, 1921.)

1. Bankruptcy ⟨⟨⟨⟨431—Surety's liability unaffected by bankruptcy of principal.

Under bond reciting desire of A., the principal, to obtain loans from N., the obligee, on warehouse receipts for grain issued by A., and conditioned to be void only if A. should on demand indemnify N. against any loss from fraudulent issuance of receipts or fraudulent conversion by A. to its own use of grain for which receipts had been given by A., the surety is liable for the full amount of the loss to the obligee, not only from the principal's issuing receipts when there was no wheat on hand, but also from its converting to its own use wheat on hand when the first receipt was issued, irrespective of whether the conversion was within four months of the filing of bankruptcy petition; the bankruptcy act not affecting the measure of damages in any case, and the liability of the surety, under U. S. Comp. St. § 9600, being unaffected by the discharge of the bankrupt.

2. Principal and surety ⟨⟨⟨⟨77—Public or bonded warehouse receipts not contemplated by a bond for a milling company unable to issue such receipts.

Bond for a milling company which was to borrow money from the obligee on warehouse receipts issued by it does not contemplate public or bonded warehouse receipts; the company being unable to issue them because not a public or bonded warehouseman.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Mechanics'—American National Bank of St. Louis against the New England Equitable Insurance Company and another. Judgment for plaintiff was modified by the Court of Civil Appeals (213 S. W. 685), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

J. D. Williamson, of Waco, for plaintiff in error.

Head, Dillard, Smith, Maxey & Head, of Sherman, for defendants in error.

SPENCER, J. This was a suit by plaintiff in error to recover of defendant in error upon a surety bond.

The facts necessary to a decision of the questions in issue are that the Alliance Milling Company, a corporation, as principal, and defendant in error New England Equitable Insurance Company, a corporation, as surety, for the purpose of assisting the milling company to obtain credit from plaintiff in error, American National Bank of St. Louis, Mo., executed and delivered to the latter the following bond:

"Know all men by these presents that we, the Alliance Milling Company, a corporation created by and existing under the laws of the state of Texas, with principal office in the city of Denton, Texas (hereinafter called the principal), as principal, and the New England Equitable Insurance Company, of Boston, Massachusetts (hereinafter called the surety), as surety, are held and firmly bound unto the Mechanics'—American National Bank, St. Louis, Missouri (hereinafter called the obligee), in

the full and just sum of fifty thousand and ⁰⁰/₁₀₀ ($50,000.00) dollars, good and lawful money of the United States of America, to the payment of which we bind ourselves, our successors or assigns, firmly by these presents.

"Dated at St. Louis, Missouri, this nineteenth day of July, A. D. 1915.

"The condition of the above obligation is such that whereas, the above-named principal intends to operate at Denton, Texas, an elevator for the storage and warehousing of grain and from time to time will be desirous of obtaining loans from the above-named obligee on warehouse receipts issued by it; and

"Whereas, the obligee is desirous of granting such loans;

"Now, therefore, the condition of this obligation is such that, if the principal shall on demand indemnify and hold harmless the said obligee against any loss or damage directly arising by reason of the issuance of fraudulent warehouse receipts signed by J. N. Rayzor, of the above-named principal, or the delivery of any grain for which warehouse receipts have been issued to the obligee, without the return of the warehouse receipts, or the fraudulent converting to their own use of any grain for which warehouse receipts have been given to the obligee above mentioned, then this obligation shall be void, otherwise to be and remain in full force and effect in law.

"Provided, however, that this obligation is issued upon the following express conditions:

"The surety shall be notified in writing addressed to its branch office in the city of St. Louis, Mo., of the issuance of a fraudulent warehouse receipt, signed as above provided, or a violation of any of the other conditions of this bond which may involve a loss or for which the surety herein is responsible hereunder immediately after knowledge of the violation of any other conditions of this bond becomes known to the said obligee. Upon the making of such claims this obligation shall wholly cease and terminate as regards any liability for any act on the part of the principal committed subsequent to the making of such claim, and it shall be surrendered to the surety upon payment of such claims.

"If the surety shall so elect this bond may be canceled at any time by giving thirty (30) days' notice in writing to the obligee, the surety remaining liable for all or any default covered by this obligation which may have been committed by the principal up to the date of such termination.

"No claim shall be made under this obligation for any pecuniary loss sustained by the obligee except on account of an act which shall have been committed during the continuance of this obligation or any renewal thereof for the period commencing on the 19th day of July, 1915, and ending on the 19th day of July, 1916, and discovered during such continuance or within two months thereafter.

"That the surety shall only be liable hereunder for such portion of the total loss sustained by the obligee for any failure or neglect of the principal embraced, within the terms of this bond, as the penalty of this bond shall bear to the total amount of bonds furnished by the said principal in favor of the obligee, and in no event shall the surety be liable hereunder for any sums in excess of the penalty of this bond.

"In witness whereof, the principal has signed its name and caused its seal to be affixed by its duly authorized officer, and the surety has caused its name and seal to be affixed by its vice president and assistant secretary on the day and year first above written."

On the 19th of July, 1915, the milling company executed to plaintiff in error its note for $10,000, due April 3, 1916, and as collateral security delivered a certificate signed by J. N. Rayzor, as president of the milling company showing 10,000 bushels of wheat in store by the milling company, subject to the order of plaintiff in error. On July 27, 1915, the milling company executed to plaintiff in error another note for $10,000, due April 23, 1916, protected by a similar certificate for a like amount of wheat, and on August 23, 1915, executed a third note to plaintiff in error for a like amount due May 20, 1916, accompanied by a similar certificate.

At the time of the execution of the first receipt the milling company had on hand 19,015 bushels of wheat. At the time of the execution of the second certicate it had on hand 10,188 bushels, and at the time of the issuance of the third certificate it had on hand 18,476 bushels.

All the wheat on hand at the date of the last receipt and all wheat placed in the elevator between that date and March 25, 1916, was withdrawn from the elevator by the milling company and ground into flour and sold by it.

On April 1, 1916, the milling company filed a voluntary petition in bankruptcy, and was thereafter adjudged a bankrupt. Neither at the time of the filing of the petition nor subsequent thereto did the milling company have any wheat on hand or in its elevator.

When the first note fell due on April 3, 1916, plaintiff in error ascertained for the first time that the milling company did not have on hand the wheat called for by the certificates. Whereupon it called upon defendant in error to make good the loss. It also filed its claim in the bankruptcy court and received $1,800 on its debt, leaving a balance due thereon at the time of the trial of $32,825.70, for which it instituted suit against and recovered judgment of the defendant in error.

[1] Upon appeal by the defendant in error the honorable Court of Civil Appeals held that as to the first certificate issued by the milling company it had breached its contract by converting the wheat to its own use, and but for this breach it would have had on hand when it became bankrupt 10,000 bushels of wheat, in which event plaintiff in error would have received in addition to the $1,800 its distributive share of the amount that would have been realized from the sale of the wheat at the prevailing market price at the time of its sale, or $1,009. It construed this to be plaintiff in error's measure of damages in so far as the first certificate was con-

cerned. As to the second and third certificates, it held that, as these were fraudulently issued, there being in fact no wheat on hand at the time of their issuance, a different measure of damages would apply, to wit, the loss occasioned by the breach of the contract. It therefore reformed the judgment in accordance with its holding. 213 S. W. 685.

The liability of the principal and surety became fixed, under the terms of the bond, upon the breach thereof by the principal. The fact that the breach may have occurred within four months of the date of filing of the petition in bankruptcy, or that the liability was contingent upon the happening of an event which postponed the accrual of the cause of action until after the filing of the petition in bankruptcy, does not in any wise change or affect the measure of damages to be applied in determining the amount of plaintiff in error's claim. The Bankruptcy Act does not deal, nor purport to deal, with the measure of damages in any case. The main object of the act is to secure, without preference, an equal distribution of the assets of the insolvent among his creditors. The measure of damages to be applied in reducing a claim, founded upon a breach of contract, to judgment, or proving such claim in a bankruptcy court is one thing, and the operation and effect of a discharge in bankruptcy of such judgment or claim, is another.

That the claim for damages for the breach of the contract was a provable debt under U. S. Compiled Statutes, § 9647 (Act July 1, 1898, c. 541, § 63, 30 Stat. 562), which provides that "debts of the bankrupt may be proved and allowed against his estate, which are * * * (4) founded * * * upon a contract, express or implied," cannot be doubted. In re James Dunlap Carpet Co. (D. C.) 163 Fed. 541; In re Smith (D. C.) 146 Fed. 923. That it was treated as such is indicated by allowing plaintiff in error its pro rata share of the assets.

After having proved and had allowed the claim in the bankruptcy court, the discharge of the bankrupt operated, not to defeat a judgment or claim founded upon a breach of the contract, but only as a payment thereof by operation of law. But the liability of the surety was in no wise altered. Section 9600, Compiled Stats., provides that—

"The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Act July 1, 1898, 30 Stat. 550, c. 541, § 16.

234 S.W.—69

The surety took the risk of the milling company's insolvency—a risk that plaintiff in error was supposedly protected against by the very bond in question. The bond was one form of security; the warehouse certificates were another; and the fact that the warehouse certificates, on account of not being recorded as chattel mortgages, thereby became ineffectual as security, does not, under the circumstances, in any wise affect the security afforded by the bond, nor does it change or affect the measure of damages to be applied because of the breach of the conditions of the bond.

There are cases holding that, if one is bound as a surety to pay any judgment that may be rendered against his principal, and such judgment is defeated by the bankruptcy of the principal, the surety shall also be released, but these cases furnish no analogy and in no sense control the liability of the surety in a case of this character. The distinction in principle between the line of cases referred to and cases similar to the one now under consideration is obvious.

Those cases included actions in attachment, suits to dissolve attachment, appeal bonds, and the like, in which the liability of the surety was made to depend upon a judgment against the principal in the first instance. Such is not the case here. The liability of the surety became absolute, and the cause of action against it arose immediately upon the breach of the conditions in the bond. It was in no wise conditioned upon a judgment being first rendered against the principal. No judgment, therefore, was necessary against the principal to fix the liability of the surety.

[2] Error is also assigned to the action of the honorable Court of Civil Appeals in holding that the certificates for wheat issued by the milling company were such warehouse receipts as contemplated by the bond, which constituted the agreement of the parties. Defendant in error contends that "warehouse receipts" as used in the bond means public or bonded warehouse receipts. In our opinion, the Court of Civil Appeals reached the correct conclusion in disposing of the assignment.

We recommend, therefore, that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.