**LEON et al. v. J. M. RADFORD GROCERY CO.  (No. 6718.)**

(Court of Civil Appeals of Texas. Austin. Feb. 6, 1924. Rehearing Denied March 12, 1924.)

1. **Bankruptcy** ⬯198—**Adjudication not discharge makes liens filed within four months void.**

Under Bankruptcy Act, § 67f (U. S. Comp. St. § 9651), avoiding liens created by judicial proceedings within four months of bankruptcy, it is the adjudication and not the discharge of the bankrupt which avoids the lien.

2. **Bankruptcy** ⬯431—**Lien against garnishee not extinguished by defendant's discharge in bankruptcy in proceedings instituted more than a year later.**

Where, in a suit to recover the balance due on an open account, plaintiff garnished defendant's account at a bank, which defendant replevied by giving bond with sureties conditioned as provided in Rev. St. art. 279, the discharge of the defendant in bankruptcy proceedings instituted more than a year subsequent to the date when the garnishment was served, was ineffectual to extinguish the lien against the garnishee, and therefore to relieve the sureties from liability on defendant's bond, notwithstanding that, due to bankruptcy, no personal judgment could be then rendered against defendant; the proper procedure in such case being to render a judgment against defendant with perpetual stay of execution, as basis for judgment against the sureties.

Appeal from Coleman County Court; S. J. Pieratt, Judge.

Action by the J. M. Radford Grocery Company against I. M. Leon and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Critz & Woodward, of Coleman, for appellants.

Baker & Weatherred, of Coleman, for appellee.

McCLENDON, C. J. J. M. Radford Grocery Company, referred to herein as the Grocery Company, brought this suit in the county court of Taylor county, on December 28, 1920, against I. M. Leon, to recover a balance of $301, upon open account, and on the same day sued out a writ of garnishment against the Coleman National Bank, referred to herein as the bank, which writ was served on the latter the day following. The bank answered on January 5, 1920, admitting an indebtedness to Leon of $1,526, represented by a bank deposit. On January 4, 1921, Leon replevied the garnished deposit by giving a bond in the sum of $650, with Leon L. Shield and H. M. Jones as sureties, who will be referred to, as the sureties, conditioned as provided in R. S. art. 279. On March 21, 1921, upon a plea of privilege filed by Leon, the original suit and garnishment

proceeding were transferred to the county court of Coleman county. On April 8, 1923, the grocery company filed an amended petition, in which it sought to recover for the price of one bale of duck of 875¾ yards, sold by it to Leon at 37½ cents per yard, with interest from January 1, 1921. On April 9, 1923, Leon filed an amended answer containing two pleas in bar, the first being a discharge in bankruptcy and the second that the duck was rotten and worthless, although warranted to be sound. The first of these pleas alleged the filing of an involuntary petition in bankruptcy against him in the federal court at San Angelo on February 14, 1922, the filing of his schedules therein, in which the grocery company was listed as a creditor, the filing of an offer of composition of 25 cents on the dollar to his unsecured creditors, its acceptance by a majority in number and amount of his creditors, and approval by the court, due notice to the grocery company of these proceedings, and its refusal to participate therein, deposit of the amount of the composition in the designated depository, and a final dismissal of the proceeding August 10, 1922. By a supplemental petition the grocery company set up the garnishment proceeding, prayed that it be consolidated with the main suit, and asked for judgment, in any event, against the sureties upon the replevy bond. The sureties answered, setting up the same defenses that were contained in Leon's amended answer, above, contending, as regards the bankruptcy, that the discharge of Leon, their principal, operated as a discharge of their liability upon the replevy bond.

The cause was tried to the court without a jury, who filed findings of fact in which the breach of warranty of the duck was sustained to the extent of 27½ cents a yard, and the facts regarding Leon's bankruptcy were found as alleged in his answer. Upon these findings judgment was rendered against Leon for $99.57 ($87.57 of which was the value of the duck at 10 cents a yard, and the balance interest from January 1, 1921, to date of judgment), with legal interest, but decreeing that, by reason of the bankruptcy composition, "no execution shall ever issue hereon against the said I. M. Leon." Judgment was also entered against the sureties, jointly and severally, for the $99.57, with interest and costs (except the costs incurred in Taylor county), including $10 attorney's fee to the bank. Both Leon and the sureties have appealed from this judgment upon a joint supersedeas bond, and have filed joint assignments of error and briefs. These assignments of error, four in number, question the correctness of the trial court's judgment upon grounds which may be summarized as follows:

(1) The confirmation of the composition operated as a discharge of all liability by Leon upon the debt in suit, and therefore it was error to render judgment against him establishing that debt.

(2) The discharge of the debt in suit by the confirmation of the composition operated as a discharge of the garnishment proceeding based thereon and of the liability of the sureties upon the replevy bond.

(3) Judgment against Leon upon the debt in suit was essential to a judgment against the garnishee bank. The condition, therefore, upon which liability upon the bond was contingent never arose, since no judgment could properly be rendered against Leon, and none was or could properly be rendered against the bank.

There is no question but that the debt sued upon was provable in the bankruptcy proceedings, and that it did not fall within any of the classes of debts which section 17 of the Bankruptcy Act (U. S. Comp. St. § 9601) provides shall not be released by the discharge. Confirmation of the composition had the same effect as a discharge. Bankruptcy Act, § 14c (section 9598).

[1] All liens created by judicial proceedings are preserved, and not affected by the bankruptcy or discharge, except when created within four months prior to the filing of the bankruptcy petition, and while the debtor is insolvent. Miller v. Clements, 54 Tex. 351; Elliott v. Booth, 44 Tex. 180, 23 Am. Rep. 593; 7 C. J. p. 192, § 289. Liens created under these excepted circumstances are by section 67f of the Bankruptcy Act (U. S. Comp. St. § 9651) rendered "null and void." The evident purpose of this exception is to prevent preferences through judicial proceedings, and to bring the property affected by the lien into the bankruptcy to be applied to the satisfaction of general creditors. It is not the discharge of the bankrupt, but the adjudication, which avoids the lien under section 67f.

[2] Under our statute it is made unlawful for the garnishee to pay any debt or deliver any effects to the defendant, and he is required to show, under oath, what, if anything, he owes, and what, if any, effects he has of the defendant. The effect of the service is to impound in the garnishee any debt or property owing to or owned by the defendant, and to create in the plaintiff a lien thereon to secure the debt sued upon. This lien is fixed as of the date of the impounding, which is the date of service on the garnishee, where the debt exists or the property is in his hands at that time; and, where the debt is created or the property comes into his hands thereafter, but before he answers to the garnishment, the date of impounding is the date when the debt is created or the property comes into his hands. In the present case the garnishment was served and the garnishee answered more than a year prior to the date the petition in bankruptcy was filed, and was therefore in no way affected by the bankruptcy. And, if the lien was not affect-

ed by the bankruptcy or the discharge of the bankrupt, then it must necessarily follow that the lien could be enforced by judgment against the garnishee in like manner as it could have been enforced had there been no bankruptcy. It is true that this lien is dependent upon the liability of the defendant, it is a security for his debts, and presupposes a valid indebtedness. Ordinarily, therefore, a judgment against the garnishee is necessarily dependent upon a judgment against the defendant. The same is true of an attachment lien. But it is not necessary in all cases that a personal judgment be rendered against the defendant. For example, where the defendant is a nonresident of the state, and is not personally served within the state, but is brought in by notice or substituted service, no personal judgment could properly be rendered against him; yet the debt against him can be established for the purpose of subjecting the debt or property in the garnishee's hands, to the satisfaction of plaintiff's claim against defendant. Berry Bros. v. Davis, 77 Tex. 191, 13 S. W. 978, 19 Am. St. Rep. 748, and cases there cited; Goodman v. Henley, 80 Tex. 499, 16 S. W. 432; Shoe Co. v. Mercantile Co. (Tex. Civ. App.) 200 S. W. 250, and cases there cited; 28 C. J. p. 320, and cases cited in note 70. Such a proceeding is one quasi in rem, and satisfaction by the garnishee of the judgment against him, based upon the judgment establishing the debt of defendant to plaintiff, constitutes a defense pro tanto to any subsequent suit brought by the defendant against the garnishee in relation to the debt or property impounded by the garnishment, although no personal judgment was or could be rendered against the defendant. Berry Bros. v. Davis, above, where the nonresident defendant was served by publication. In Goodman v. Henley the service was by statutory notice.

The replevy bond is authorized for the purpose of enabling the defendant to deal with the debt or property in the garnishee's hands unrestricted by the garnishment. He may enforce the payment of such debt or recover possession of his property, if otherwise entitled to do so. The garnishee, on the other hand, is no longer bound by the inhibition against paying the debt or delivering the property to defendant. He cannot longer be held liable for so doing. The bond takes the place of the impounded debt or property, and the defendant and his sureties are liable thereon only to the extent that the debt or property impounded could have been subjected to plaintiff's debt had no bond been given. The statute expressly provides that the defendant "may make any defense which defendant in garnishment could make in such suit." And it necessarily follows that the sureties have the same right, as their liability could not exceed that of their principal. Conversely, the liability of the sureties is not defeated by any acts or circumstances which would not have operated as a discharge of the garnishee in the absence of a replevy bond.

To hold that no judgment could be rendered against the sureties because no personal judgment could be rendered against defendant on account of his discharge in bankruptcy would in effect be a holding that the discharge operated as an extinguishment of the garnishment lien. The exact question at bar has been repeatedly passed upon by various American courts, and with practical unanimity it is held that, where the defendant has been discharged in bankruptcy, the court may proceed against the sureties upon the replevy or release bond, both in garnishment and attachment cases. The uniform procedure in such cases is to render a judgment against the defendant with a perpetual stay of execution, as a predicate for the judgment against the sureties—the procedure followed in the present case. Pinkard v. Willis, 24 Tex. Civ. App. 69, 57 S. W. 891; Hill v. Harding, 130 U. S. 699, 9 Sup. Ct. 725, 32 L. Ed. 1083 (the leading case on the subject); Kendrick v. Warren, 110 Md. 47, 72 Atl. 461; Butterick v. Bowen, 33 R. I. 40, 80 Atl. 277; Braiding Co. v. Dyeing Co., 44 R. I. 8, 114 Atl. 129; Smith v. Lacey, 86 Miss. 295, 38 South. 311, 109 Am. St. Rep. 707; Sanderson v. Buckley, 111 Miss. 748, 72 South. 148; Coal Co. v. Antezak, 164 Mich. 110, 128 N. W. 774, 130 N. W. 305, Ann. Cas. 1912B, 778; Holyoke v. Adams, 59 N. Y. 233; Id., 1 Hun, 223; Pump Co. v. Iron Co., 227 Pa. 262, 75 Atl. 1094; 1 Collier on Bankruptcy (13th Ed., 1923) 587; 7 C. J. p. 410, and notes 96 and 97.

The question is so thoroughly settled that a review of the authorities is unnecessary. We shall only quote from the last case cited:

"The appellee has secured its discharge, * * * and its personal liability is gone; but that does not constitute any reason why a judgment against it should not be entered for the special purpose of fixing and enforcing the 'liability of the surety. The surety took the risk of the appellee's insolvency—a risk that the appellant was supposedly protected against by the very bond in question. So it would be most unfair to allow the substitution of the bond for the goods attached, and then to deny the formal relief necessary in order to enforce its terms against the surety. There is nothing in our law, or practice, or in the announced public policy of the state, to require such a ruling."

The only contrary holdings we have been able to find are from Massachusetts (Carpenter v. Turrell, 100 Mass. 450; Hamilton v. Bryant, 114 Mass. 543; Johnson v. Collins, 117 Mass. 345), where the condition of the release bond was "to pay any judgment the plaintiff may recover in the suit then pending," the holding being that, since the discharge made any personal judgment against the defendant no longer possible, there could be no judgment against the sureties to which the condition of the bond would be applicable.

It seems that a subsequent statute of that state now renders the sureties liable in such cases. Rosenthal v. Nove, 175 Mass. 559, 56 N. E. 884, 78 Am. St. Rep. 512; Barry v. Construction Co., 229 Mass. 308, 118 N. E. 639. The New York case in 1 Hun, 223, above, refers to the case in 100 Mass. with distinct disapproval.

The case most strongly relied upon by appellant is Klipstein v. Allen-Miles Co., 136 Fed. 385, 69 C. C. A. 229. In that case the garnishment was sued out within four months of the bankruptcy of the defendant, and while the latter was insolvent, and was concededly avoided by the bankruptcy proceeding. The plaintiff, however, contended that the condition of the release bond was such as to render the sureties absolutely liable for the debt of defendant, regardless of the effect of the bankruptcy upon the garnishment, under section 16 of the Bankruptcy Act (U. S. Comp. St. § 9600), which provides that the liability of sureties shall not be altered by the discharge of the bankrupt. Manifestly this is an entirely different question from that here involved, and the opinion in that case cannot be construed as in any way relating to it. The bond there under consideration was "conditioned for the payment of the judgment that shall be rendered on such garnishment," and the court construed that language to mean the same as that expressly used in our garnishment statute, namely, that it bound the sureties "for the payment of the judgment that shall be rendered on the garnishment proceeding," that is "against the garnishee if the bond had not been given"; the court concluding with this sentence:

"No judgment could have been rendered against the garnishee on the garnishment proceedings if the bond had not been given, because such proceedings were invalidated by the adjudication in bankruptcy."

It may be noted, in this connection, that in some states, as formerly in Massachusetts, the release bonds authorized in garnishment and attachment proceedings were required to be conditioned for the payment of defendant's debt, and the courts of some of the states construe such bonds as importing an obligation to pay that debt, regardless of the validity of the proceedings dissolved or released by such bonds. With this construction of the bond, a fair question might be raised whether the destruction of the lien of garnishment or attachment operated as a discharge of the bond. Upon this question there are two lines of authority.

"Some courts have held that the bond is a substitute for the lien of attachment and that the adjudication of the principal has no effect on the liability of the surety notwithstanding that the lien of the attachment is destroyed by virtue of section 67f, and that the creditor is entitled to a special judgment against the bankrupt, execution not to be issued thereon, as a

259 S.W.—21

basis for future action against the surety. There is authority, however, for the contrary proposition that an attachment bond given within the four months' period is dependent upon the lien of the attachment, and as that becomes void by virtue of the adjudication, the bond falls with it." 1 Collier on Bankruptcy (13th Ed.) p. 588.

Cases illustrative of the two holdings are cited in notes 27 and 28 to the text last quoted.

The quotation from 1 Rem. on Bankruptcy (1908 Ed.) 902, 903, to the effect that:

"Whenever the liability of the surety is dependent upon judgment being obtained against the bankrupt, as usually is the case in attachment and appeal bonds, then his discharge, preventing judgment, will prevent the surety's liability from attaching,"

manifestly has no application to that class of bonds which are conditioned, not upon judgment against the defendant, but upon judgment against the garnishee, as the cases cited in support of the text will readily demonstrate. In Odell v. Wootten, 38 Ga. 224, and Goyer v. Jones, 79 Miss. 253, 30 South. 651, it was held that appeal bonds from inferior to other trial courts, where the cause was tried de novo in the latter, were released by the defendant's discharge pending the appeal, and this upon the ground that the discharge might be set up in the court on appeal in like manner as any other defense. A different rule seems to apply, at least in this state, to appeal bonds to appellate courts of review only. Hickcock v. Bell, 46 Tex. 610.

Appellant also quotes the first part of a paragraph on "Bankruptcy" under the general head of "Garnishment" in 28 C. J. 539, which apparently supports its view. The only cases cited as upholding the text are the Klipstein Case, above, and Surety Co. v Medlock, 2 Ga. App. 665, 58 S. E. 1131, neither of which is in point. The remaining portion of the paragraph quoted from reads:

"In some jurisdictions there are special statutory provisions for the entry of special judgments for plaintiff in an attachment or garnishment suit against a bankrupt or insolvent defendant who has given dissolution bond to enable plaintiff to maintain action against the sureties thereon."

The authorities cited to support this quotation are all from Massachusetts, where, as clearly pointed out in the Barry Case, above, the liability of the surety was denied under the earlier decisions—

"not on the ground that the court had not inherent and statutory authority to order qualified judgments and to vary the forms of executions 'when necessary to adapt them to changes in the law, or for other sufficient reasons,' * * * but upon the fact that the condition of the several bonds which the sureties executed was to pay the plaintiffs the amount, if any, which they should recover against the defendant, * * * the nonpayment of which

placed the defendant in default; and upon the law that the discharge in bankruptcy or insolvency prevents the recovery of a judgment which shall establish the personal liability of the principal defendant, and brings to an end the contingency upon which the obligation of the bond is made to depend."

It will be seen from an examination of the above cited cases, which hold the sureties not affected by the defendant's discharge, that the power to render a qualified judgment against the defendant is not made to depend upon express statutory authority. Where no such authority existed the courts have usually held that the power to render such judgment was inherent in the court, as essential to the ends of justice.

In Bank v. Insurance Co. (Tex. Com. App.) 234 S. W. 1087, cited by both parties, the bond was clearly not of the character released by the discharge in bankruptcy of the principal. But the decision is not pertinent to the question at issue. In referring to the line of cases under consideration in the above quotation from Remington, the court says:

"Those cases included actions in attachment suits to dissolve attachment, appeal bonds, and the like, *in which the liability of the surety was made to depend upon a judgment against the principal in the first instance.*" (Emphasis ours.)

The liability here was not dependent upon a personal judgment against the principal, but upon a judgment against the garnishee, and was not affected by the defendant's discharge in bankruptcy.

No other questions are raised in the appeal.

The trial court's judgment is affirmed.

Affirmed.