T. L. WREN ET AL. v. JOHN B. PEEL ET AL.

(Case No. 5476.)

1. JUDGMENT LIEN — REPLEVIN — PRINCIPAL AND SURETY — EXECUTION — SUBROGATION.— A writ of possession issued December 22, 1877, on a judgment against W., which included an execution under that judgment against W. as principal, and T. and three others as sureties of W., within a year after its rendition. The sureties had become liable, as such, on a replevin bond given to retain possession of the land. Another execution was issued January 19, 1878, against all parties, within a year, which was returned on account of a *supersedeas* sued out by the principal and all the sureties, except T., who had failed to join in suing out a writ of error. The judgment was affirmed on error, June, 1879, but never recorded. A third execution issued January 23, 1880. Four other executions issued at intervals of less than a year, and under the last one the land of T. was sold to satisfy the judgment. *Held:*

(1) T. being but a surety, though the judgment against him as such on the replevin bond was binding until reversed, yet it did not change his relation as surety.

(2) The relation of surety, as a continuing one, should be recognized as between the parties themselves and protected under the rules of equity, in the

absence of some controlling statute, when the rights of the creditor are not prejudiced.

(3) Though the statute provided that the judgment rendered against the parties to the replevin bond should be joint and several, an execution could not issue against one of the sureties while the principal and the other sureties were prosecuting, under a *supersedeas* bond, a writ of error.

(4) The condition in the replevin bond was "that the defendant will not injure such property, and that he will pay the value of the rents of the same in case he shall be condemned so to do." The principal could not be held to have violated, according to any final judgment, that condition, so long as he was prosecuting, under a *supersedeas*, an appeal from it.

(5) The judgment creditor not being in condition, pending the writ of error, to have execution against the principal, he could not, at that time, have it issued against the surety, T.

(6) It not being shown that there was such want of diligence as would operate as a divestiture of the judgment lien, whatever title was vested in T., the surety, passed under the execution sale of July 5, 1881.

(7) T. alone could complain of any irregularities, which, as between himself and principal and co-sureties, might have been prejudicial to his rights. Citing Martin v. Rice, 16 Tex., 157, and Hancock v. Metz, 15 Tex., 205.

(8) A purchaser under a former judgment against T., who bought subject to the lien of the judgment which has been above considered, would have had the right to pay off that judgment and protect himself in the title.

2. PURCHASER — COMMUNITY ESTATE.— The purchaser from a woman, to whom patent for the land sold, issued after the death of her husband, takes title, as against the heirs of the deceased husband, unaffected by his community interest, in the absence of notice of its existence.

APPEAL from Travis. Tried below before the Hon. A. S. Walker. The opinion states the case.

*Carleton & Morris*, for appellants, cited: Hargrove v. De Lisle, 32 Tex., 176; Moore v. Letchford, 35 Tex., 185; Nicholas v. Hester, 42 Tex., 180; Wright v. Rhodes, 42 Tex., 525; Jackson v. Butler, 47 Tex., 423; Burleson v. Henderson, 4 Tex., 57; Wood v. Smith, 11 Tex., 368; Willie v. Thomas, 22 Tex., 175; Dickson v. Burke, 28 Tex., 118; Freeman on Judgments (3d ed.), secs. 482, 484; Pasch. Dig., arts. 4786, 7005; Campbell v. Beckwith, 17 Tex., 440; Blalock v. State, 35 Tex., 89.

*Robertson & Williams* and *Jno. R. Peel*, for appellees, on failure to issue execution, cited: Freiberg, Klein & Co. v. Embree, W. & W. Cond. Rep., 1095; Sartain v. Hamilton, 14 Tex., 348; Herndon v. Bremond, 17 Tex., 432; Jones v. M. & A. R. R. Co., 5 How. (Miss.), 407; Freeman on Executions, 32, 33; Herman on Executions, title "Supersedeas;" Bassett v. Proetzel, 53 Tex., 569; Barron v. Thompson, 54 Tex., 235; Ficklin v. McCarty, 54 Tex., 370; Woodson v. Collins, 56 Tex., 168; Williams v. Davis, 56 Tex., 250.

On the judgment being joint, they cited: Bassett *v.* Proetzel, 53 Tex., 569; Barron *v.* Thompson, 54 Tex., 235; Ficklin *v.* McCarty, 54 Tex., 370; Woodson *v.* Collins, 56 Tex., 168; Williams *v.* Davis, 56 Tex., 250; Freiberg, Klein & Co. *v.* Embree, W. & W. Cond. Rep., 1095; Jones *v.* M. & A. R. R. Co., 5 How. (Miss.), 407–409; Pasch. Dig., 4783–4789, 5100.

STAYTON, ASSOCIATE JUSTICE.— It appears that on November 27, 1877, E. E. and E. C. Bartholomew recovered a judgment in the district court for Travis county against David V. and Anna Whiting for certain lands, and that they also at the same time recovered a judgment for $202.60 against the Whitings, F. W. Chandler, Alfred Grooms, T. E. Tullis and T. L. Wren, on a replevin bond, which the Whitings as principals, and the others as sureties, had executed to retain possession of the land after it had been sequestrated.

On December 22, 1877, a writ of possession, which seems to have included an execution, issued under that judgment and was executed, but the return did not show that anything was done under so much of the writ as was in substance an execution.

On January 19, 1878, an execution issued against the Whitings and all their sureties for the sum adjudged against them on the replevin bond, but this execution was returned on February 11, 1878, in obedience to a writ of *supersedeas* sued out by David V. and Anna Whiting, F. W. Chandler, Alfred Grooms and T. L. Wren, who, not joined by T. E. Tullis, on the 9th February, 1878, had filed their petition for writ of error and a *supersedeas* bond.

The cause brought to this court on writ of error by Whiting and others was affirmed June 9, 1879, and the mandate was filed in the court below on January 3, 1880.

A third execution, first after issue of mandate, was issued on January 23, 1880, against all the original defendants, and the sureties on the writ of error bond, for the amount of original judgment and all costs in district and supreme courts, and this execution was returned not satisfied by order of plaintiffs' attorneys.

A fourth execution issued March 3, 1880, to Eastland county, against same parties as third execution, and it was levied on twenty-six labors of land in Eastland county belonging to Tullis, but it was not sold for want of a purchaser.

A fifth execution issued January 13, 1881, against same parties as fourth execution, and was levied April 9, 1881, on one hundred and forty acres of land in Travis county and the nine lots in controversy in this suit, all levied on as property of T. E. Tullis. No sale was

made of this property; the writ was returned May 2, 1881, and a *venditioni exponas* was asked for.

A sixth execution and order of sale issued May 2, 1881, ordering the sale of the property levied on by fifth execution, and on July 2, 1881, it was returned without sale and *venditioni exponas* asked for.

A seventh execution and order of sale issued July 5, 1881, for sale of same property levied on by virtue of executions Nos. 5 and 6, and sale made July 5, 1881, at which sale F. G. Morris became the purchaser of the lots in controversy in this suit for the sum of $20.

The appellants deraign title to the lots in controversy by regular chain of transfer from F. G. Morris.

The judgment in favor of the Bartholomews was never recorded.

That Tullis had title to the lots in controversy in this cause through a regular chain of transfer from Juliet Jayne, to whom the land was patented on September 1, 1846, is not questioned by the defendants Jones and Samora, who also claim title to the lots through a sale made under a judgment rendered June 26, 1878, against him, and on an execution which issued November 1, 1878.

The other defendants claim through Brewster H. Jayne, who died intestate in July, 1842, leaving Juliet Jayne as his surviving widow. The foundation of their claim is, that the property in controversy, although patented to Juliet Jayne in 1846, was the common property of herself and husband; and they seem to have established a claim to such an interest in the property in an action in which the heirs of Brewster Jayne were plaintiffs, and one claiming through the judgment rendered in favor of Harrell against Tullis on June 26, 1878, was a defendant.

The persons in this cause claiming under one of the defendants in that cause claim, however, that they purchased before *lis pendens* and are therefore not bound by that judgment.

The claim of the appellee, John R. Peel, need not be here stated, further than to say that it is subordinate to the claims of those claiming through the judgment rendered in favor of the Bartholomews against Tullis, and subordinate to those claiming through the subsequent judgment against Tullis, and is entirely without merit.

The real question in the case is: Did the judgment rendered in favor of the Bartholomews against D. V. Whiting, Anna Whiting, F. W. Chandler, Alfred Grooms, T. E. Tullis and T. L. Wren, lose its lien prior to the sale made under it on the 15th of July, 1881?

If it did not, then the title to the property in controversy passed

by that sale; and the sale made under the subsequent judgment, through which James and Samora claim, passed no title whatever which is not subordinate to it.

It is claimed that the Bartholomew judgment lost its lien as against the property of Tullis by the failure to issue execution within one year after the return of the execution which issued on the 19th of January, 1878.

Whether this is so depends on whether execution against Tullis might legally have issued pending the writ of error prosecuted by the defendants other than Tullis, they having given a *supersedeas* bond.

In considering this question it must be remembered that Tullis was but a surety on the replevin bond executed by the Whitings, upon which the judgment was rendered against the principals and sureties.

While that judgment established the liability of Tullis and all others against whom it was rendered, so long as it stood unreversed, yet it did not change the relation between the principals and sureties on the replevin bond. Brandt on Suretyship, 27; Fell on Suretyship, 533; M. & M. Bank *v.* Bank of Pennsylvania, 7 Watts & Serg., 335.

We are of the opinion, that, in such cases, this relation in all its bearings should be recognized, that the rights of the several persons bound, even by a joint and several judgment, as between themselves, may be protected under the well settled rules applicable to principal and surety, unless the matter be controlled by some statutory provision, or unless it appears that the right of the creditor will be thereby prejudiced.

Under the laws of this state a judgment cannot be rendered against a surety upon any instrument of writing unless judgment at the same time, or before, be rendered against the principal, except in the cases in which it is otherwise provided by statute. P. D., 1449; R. S., 1207, 1208.

The excepted cases are such as, to enforce the general rule, would prejudice the right of the creditor, or operate no advantage to the surety to have the judgment so rendered.

This is so largely for the reason that the principal is entitled to make such defenses as he has, and thereby relieve himself and sureties, if he can, from liability; and at the same time for the purpose of so fixing the liability of the principal as to fix the right of the surety to pay the judgment and have reimbursement from his principal without having to resort to another action to fix such liability

on the principal; whereas, if judgment is permitted to be taken against the surety alone, he may be compelled, notwithstanding he may make every defense known to him, to pay a debt for which his principal is not liable, and for this be denied reimbursement, for the reason that his principal has, and may, when opportunity is given him, establish a complete defense against the claim on which the liability of the surety was made to depend.

The same reasons for which a judgment against a surety alone is denied apply with equal force to any process or proceeding to enforce a judgment against a surety in a case in which an appeal or writ of error, prosecuted under a *supersedeas* bond, is perfected by a principal for the purpose of having a judgment against himself and sureties revised.

The statute regulating the replevy of property sequestrated provided that in case a judgment was rendered against the obligees in such a bond, it should be joint and several (P. D., 5100); and from this it is urged that execution might issue against one of the sureties notwithstanding the principals and the other sureties were prosecuting a writ of error under a *supersedeas* bond.

We are of the opinion that this view cannot be maintained, for, though the judgment may for some purposes be several in its character, yet it is certainly true that its reversal upon appeal or writ of error prosecuted by the principal alone would operate as a reversal as to all persons against whom the judgment was rendered, for there can be no liability on the part of a surety under a judgment against a principal and surety, when, upon appeal or writ of error, the judgment has been reversed, there being nothing in the case to render the surety liable otherwise than as surety.

The condition in the bond was: "That the defendant will not injure such property, and that he will pay the value of the rents of the same, in case he shall be condemned so to do." Pasch. Dig., 5100.

The principal has not been "condemned so to do," within the meaning of the law, so long as from the judgment he is prosecuting an appeal or writ of error under a *supersedeas* bond; and until payment of the judgment may be enforced against him, it certainly cannot be against his surety, for reasons manifest. It seems to us clear, under the facts of this case, "that unless the case be in such condition as that the plaintiff might have issued an execution against the principal, had he desired to do so, he cannot proceed against the surety. . . . To hold that he could, would be to place the sureties in a position less favorable than that occupied by the principal." Parnell *v.* Hancock, 48 Cal., 455.

The execution which was superseded issued within twelve months after the judgment was rendered.

The second execution, issued after the judgment was affirmed, was issued within twelve months after the affirmance, and was levied on property which could not be sold for want of bidders.

The writ was issued within twelve months and levied on the property in controversy, and was followed by appropriate writs until the sale was made on July 5, 1881.

It is not shown that there was such want of diligence in making the sale as would operate a divestiture of the judgment lien. Graves v. Hall, 13 Tex., 379; Riddle v. Bush, 27 Tex., 675; Bassett v. Proetzel, 53 Tex., 569; Barron v. Thompson, 54 Tex., 235; Ficklin v. McCarty, 54 Tex., 370; Williams v. Davis, 56 Tex., 250; Woodson v. Collins, 56 Tex., 168.

If there were irregularities in the executions, through which the rights of Tullis, as between himself and his principals and co-sureties, were prejudiced, in that the executions were for sums for which he may not have been responsible, that was a matter of which Tullis alone could complain. Martin v. Rice, 16 Tex., 157; Kendrick v. Rice, 16 Tex., 254; Hancock v. Metz, 15 Tex., 205.

The purchasers under the judgment rendered in favor of Harrell against Tullis would have had the right to pay off the judgment against Tullis and his principals and co-sureties in favor of the Bartholomews, and thus have protected themselves in the title to the property which they had bought subject to the lien of the Bartholomew judgment. This was not done, and it must be held that the appellants have the superior title to the property in controversy.

The property having been patented to Juliet Jayne long after the death of her husband, the heirs of her husband, even though the property may have been affected with a community character, could not recover from one purchasing from the holder of the legal title for a valuable consideration, unless to such persons notice was brought of the fact that the property was community property.

No such notice is shown to the appellants or those through whom they claim; hence, the appellants have title superior to any which any person claiming through Brewster Jayne can assert.

The judgment will be reversed, and judgment here entered in favor of the appellants for the property in controversy.

It is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered June 2, 1885.]