CHICKASAW HOTEL Co. *v.* C. B. BARKER CONSTRUCTION
Co. et al.*

(*Jackson.*   April Term, 1916.)

1. MECHANICS' LIENS.   Purpose of statute.   Construction.

The intention of the legislature in enacting the mechanic's lien
laws was to secure and protect the laborer in his wages, and
thereby to promote and encourage improvements, and the act
should be given a liberal construction so as to carry out such
purpose. (*Post, pp.* 314, 315.)

Cases cited and approved: Alley v. Lamier, 41 Tenn., 540; Truxall
v. Williams, 83 Tenn., 428: Barnes v. Thompson, 32 Tenn., 313:
Steger v. Arctic, etc., Co., 89 Tenn., 453; Luttrell v. Railroad,
119 Tenn., 508.

2. MECHANICS' LIENS.   Procedure.   Construction.

While the law is strict in its requirements that the claimant shall
make it clearly appear that he has a lien, yet when that ap-
pears remedial laws for its enforcement are to be liberally
construed. (*Post, p.* 315.)

Case cited and approved: Thompson v. Baxter, 92 Tenn., 305.

3. BANKRUPTCY.   Mechanics' liens.   Discharge in bankruptcy.
Statute.

Under Bankrupt Act, July 1, 1898, chapter 541, section 67, cl. D,
30 Stat. 564 (U. S. Comp. St. 1913, section 9651), providing
that liens given or accepted in good faith and for a personal
consideration, which have been recorded according to law,
if the record thereof is necessary to impart notice, shall not
be affected by the act, and section 16 (section 9600), providing
that the liability of a codebtor with, or guarantor or in any
manner a surety for, a bankrupt shall not be altered by the
bankrupt's discharge, there was no intention to impair liens
valid under the State laws, but to give the bankrupt personal

*On the effect of bankruptcy of principal contractor upon lien
rights of subcontractors or materialmen, see note in 51 L. R. A.
(N. S.), 68, and as to the effect of bankruptcy of contractor on
right of laborer or materialman to enforce mechanic's lien against
property improved, see note in 26 L. R. A. (N. S.), 409.

135 Tenn.—20

immunity from his debts, leaving intact all liens existing prior
to the bankruptcy in favor of his creditors, so that mechanics'
liens upon the property of a hotel company in force more than
four months prior to the contractor's adjudication in bank-
ruptcy continued in force as against the property of the hotel
company, after the contractor's discharge. (*Post, pp.* 315-321.)

Cases cited and approved: Pike Bros. Lbr. Co. v. Mitchell, 132
Ga., 675; In re Huston, 7 Am. Bankr. Rep., 92; Crane Co. v.
Signal Co., 42 Misc. Rep., 338; In re Grissler, 136 Fed., 754.

Cases cited and distinguished: Holland v. Cunliff, 96 Mo. App.,
67; Eberle v. Drennan, 40 Okla., 59.

4. BANKRUPTCY. Discharge of contractor. Parties. Judgment
against owner.

The owner filed a bill in chancery against the contractor, the
guaranty company, and certain sub-contractors and material-
men who had filed liens against the property, and the separate
suits of the lien claimants were consolidated therewith, and
the owner sought judgment against the contractor and the
surety company for the amount of liens established against
its property, and a stipulation between the hotel company, the
construction company by its trustee in bankruptcy, and the
surety company was filed, showing the amount due from the
hotel company to the construction company, providing that it
should be applied to the discharge of liens for which the
hotel company was secondarily liable, without releasing the
surety, and the construction company thereafter filed a peti-
tion to stay, and later alleged its discharge in bankruptcy as
a bar to the lien claims. *Held*, that, as all the parties were
before the court, the fact that judgment could not be had
against the contractor by reason of his adjudication in bank-
ruptcy did not prevent a foreclosure of the liens against the
hotel property, and that, as the trustee in bankruptcy came
into court, it was not necessary that the lienholders should
be compelled follow the trustee and the bankrupt back into
the bankruptcy court to adjust their claims. (*Post, pp.* 321-327.)

Hotel Co. v. Construction Co.

Cases cited and approved: Warner v. Yates, 118 Tenn., 548; Luttrell v. Railroad, 119 Tenn., 492; Wolf v. Stix, 99 U. S., 1; U. S. Wind, Engine & Pump Co. v. N. Penn. & Iron Co., 227 Pa., 262; Chamberlin v. Huguenot Mfg. Co., 118 Mass., 532; New Lamp Chimney Co. v. Ansonia Brass & Copper Co., 91 U. S., 656; Munson v. Railroad, 120 Mass., 81; Pike Bros. Lbr. Co. v. Mitchell, 132 Ga., 675.

Cases cited and distinguished: Hill v. Harding, 130 U. S., 699; Butterick Pub. Co. v. Bowen, 33 R. I., 43; Powers Dry Goods Co. v. Nelson, 10 N. D., 580.

5. BANKRUPTCY. Proof of claim. Action.

In the case of a bankrupt corporation, the bankruptcy act does not restrain a creditor who has not proved his claim in bankruptcy from prosecuting an action to judgment to enforce his lien upon the property attached or to charge officers or stockholders liable for the debts of the corporation. (*Post, pp.* 321, 327.)

---

FROM SHELBY

---

Error to Chancery Court of Shelby County.—FRANCIS FENTRESS, Chancellor.

WILSON & ARMSTRONG, for plaintiff in error.

H. H. BAKER, McGEHEE, LIVINGSTON & FARRABAUGH and J. W. CANADA, for defendant in error.

MR. A. R. GHOLSON, Special Judge, delivered the opinion of the Court.

The facts so far as material to this inquiry are undisputed and are as follows:

On October 11, 1912, the Chickasaw Hotel Company a corporation, entered into a contract with the C. B.

Barker Construction Company, also a corporation, by which said construction company agreed to erect on a certain lot in Memphis belonging to the hotel company a building known as the Chisca Hotel. The Barker Construction Company, as principal contractor, gave an indemnity bond with the United States Fidelity & Guaranty Company as surety to protect the hotel company against liens. The construction company did not pay all the subcontractors and materialmen for work done and materials furnished for said hotel building, and some nineteen of these parties filed suits in the chancery court at Memphis, claiming liens upon the hotel property. Thereupon the hotel company filed a bill in said chancery court against the C. B. Barker Construction Company, the United States Fidelity & Guaranty Company, the trustees in certain deeds of trust, and said subcontractors and materialmen.

The said bill, among other things, stated that the several lien claimants had served notices and had filed bills thereon to collect from it their respective claims. It alleged that the said construction company and the said Fidelity & Guaranty Company denied some of said claims, or some parts thereof, and denied that some of them were liens on the property of the complainant. In said bill the following allegation is made by the hotel company:

"If said claims are valid and binding liens upon its property, the complainant wishes them paid, and complainant also desires that said Barker Construction

Company comply with said contract to pay same, and that said United States Fidelity & Guaranty Company should comply with its contract and bond and should indemnify and save it harmless against payment of same. This complainant, however, cannot safely pay or discharge same, even if it had the money in its hands for that purpose, with any denial of liability, or correctness or justness of such claims, either by the Barker Construction Company or the United States Fidelity & Guaranty Company."

The prayer of the bill asked that all separate suits of the lien claimants be enjoined, and that they be required to establish their respective claims in the suit brought by the hotel company; that all pending bills be treated as cross-bills in said cause, and the various causes consolidated thereunder; that if any of the lien claimants had valid and subsisting liens against its property, said construction company and said guaranty company be required to discharge same in accordance with their contracts and with the bond of said guaranty company, and that complainant be granted a decree against both of said parties for the amount of such claims as are established as liens against its property, etc.

On September 11, 1914, the causes were consolidated under the bill of said Chickasaw Hotel Company, and an order entered that the proof taken in each case be read as to all the causes so far as applicable.

It was agreed by counsel, in order to save costs, that the case of the York Lumber & Manufacturing Com-

pany, was the one that should be brought to this court by appeal, the record in that case being similar to the records in all the other causes.

The bill of the York Lumber & Manufacturing Company was filed April 7, 1914. The answer of the construction company was filed September 22, 1914. The answer of the Chickasaw Hotel Company was filed October 24, 1914, both of these answers being to the bill of the York Lumber & Manufacturing Company. The deposition of P. A. Gates, proving the claim of the York Lumber & Manufacturing Company, was filed February 9, 1915. No proof was taken to controvert it.

On October 5, 1915, there was filed in the consolidated causes a stipulation of settlement of account between the hotel company and the construction company, which agreement was made between and among three parties: The hotel company, the C. B. Barker Construction Company, by R. E. Montgomery, Vice President, also by R. E. Montgomery its trustee in bankruptcy, and the United States Fidelity & Guaranty Company. This agreement showed that the trustee in bankruptcy in making said agreement was acting by and with the authority of the bankrupt court administering the estate of said construction company. The purport of said agreement was that the clerk and master's report in said cause, filed on the 20th of September, 1915, finding a net balance owing to the construction company by the hotel company of $22,853.38, should be modified so as to show that said hotel com-

pany owed said construction company the sum of $19,-
000 as of October 1, 1915, which was to be in full and
final settlement between the parties of all claims and
counterclaims due for the construction of the Chisca
Hotel, and when paid by the said hotel company was
to be a full discharge therefor. Judgment was to be
entered against the hotel company for said sum, to
bear interest from October 1, 1915, until paid. It was
stipulated that while said judgment might be in favor
of said construction company, the said $19,000 was to
be held and applied first to the liquidation and dis-
charge of all legally valid claims for material, labor,
and subcontractors which had been or might be estab-
lished as liens against the property of the hotel com-
pany, or for which the Chickasaw Hotel Company was
secondarily liable by reason of the lien claims charge-
able to the construction company; that said agree-
ment was in no way to release the Fidelity & Guaranty
Company from its liability under its said bond to
indemnify and hold harmless said hotel company
against any liens or balance on any lien claims, ma-
terial claims or labor claims, or subcontractors' claims,
left unpaid after the application of the said $19,000.

Upon this agreement a decree was by consent on the
same day duly entered in said consolidated causes, em-
bodying said stipulation, and in conformity thereto.

On November 4, 1915, the C. B. Barker Construction
Company filed a petition for stay and leave to plead
its bankruptcy, alleging that on the 21st of September,
1915, it filed its voluntary petition in bankruptcy, and

was duly adjudged on the same day a bankrupt in the district court of the United States for the Western District of Tennessee; that on the 28th of October, 1915, it had applied for a discharge in bankruptcy. It insisted that all claims against it sued on in said consolidated causes were properly provable in said bankruptcy proceeding, and that a discharge of it therein would release it from all of said claims, and it asked the court to stay all further proceedings in said consolidated causes until its application for the discharge be heard. This petition for stay was denied by the chancellor.

On November 19, 1915, exceptions were filed in said consolidated causes by said construction company, and also by the hotel company, to all testimony offered by complainants in each and every one of the consolidated causes tending to establish complainants' accounts, or any indebtedness or claims against said construction company, upon the ground that said construction company had been duly adjudged a bankrupt by a court of competent jurisdiction, in which the estate of said bankrupt was being administered, and in which the claims sued upon by complainants were properly provable, and that the chancery court was without jurisdiction to further proceed, etc.

On January 21, 1916, leave having been obtained, the supplemental answer of said construction company and said hotel company was filed, pleading the adjudication and discharge of said construction company as a bankrupt (which discharge was granted on

the 15th day of January, 1916), as a bar to the claims of all the lien claimants, and contending that all of their liens upon the property of said respondents, or either of them, had been released and discharged.

On March 17, 1916, a final decree was entered by the chancellor, in said consolidated causes, adjudging the rights of all the parties. The said construction company was adjudged to be indebted to the various lien claimants, eleven in all, in the respective amounts claimed, with interest thereon from February 6, 1914, and they were adjudged to have mechanic's or furnisher's liens upon said lot and property belonging to the hotel company. That the plea of said construction company and said hotel company of the discharge in bankruptcy in these causes as a bar to the liens of the said lien complainants did not defeat said liens or prevent said claimants from enforcing them upon the property of the hotel company. That the hotel company was entitled to a decree against the said guaranty company for the difference left of complainants' lien debts after applying the $19,000 of indebtedness due by the hotel company to the construction company. That said sum of $19,000 would be first applied on said liens and the costs. The said hotel company was ordered to pay the remainder of said lien debts and costs, and if not paid within sixty days, the property of the hotel company would be sold and the proceeds applied thereon.

Judgments were rendered in favor of the eleven lienholders for the amount of their respective debts,

interest, and costs, against said construction company, but no executions were to issue because of its discharge in bankruptcy, and the issuance of such executions was perpetually enjoined.

The hotel company has appealed, and the construction company has brought the case up by writ of error. Both have assigned errors, the substance of which is that a valid judgment against the principal contractor, adjudicating the amount of the subcontractor's claim, is a necessary prerequisite to the enforcement of a mechanic's lien; that the property owner is entitled to said adjudication, and the burden is upon the subcontractor to furnish it; that the discharge in bankruptcy of the principal contractor prevented a judgment against it, and as a consequence prevents the enforcement of the lien; that the bankrupt court alone had jurisdiction to adjudicate any and all claims against the bankrupt; that the lien claimants herein, having failed to secure an adjudication of their claims in the bankrupt court, have no valid judgments as a basis for the enforcement of their liens.

The manifest intention of the legislature in enacting the mechanic's lien laws was to secure and protect the laborer in his wages, and thereby to promote and encourage improvements. *Alley* v. *Lanier*, 1 Cold., 540; *Truxall* v. *Williams*, 15 Lea, 428.

The object of the legislature was to secure to an industrious, meritorious class of the community the benefit of their labor, and the act should be so construed as to carry out this laudable purpose. *Barnes*

v. *Thompson,* 2 Swan, 313; *Steger* v. *Arctic, etc., Co.,* 89 Tenn., 453, 14 S. W., 1087, 11 L. R. A., 580.

The uniform policy has been to give the mechanic's lien law a liberal construction to carry out its purpose, and to secure and protect those entitled to the lien, and thereby to promote and encourage improvements. *Luttrell* v. *Railroad,* 119 Tenn., 508, 105 S. W., 565, 123 Am. St. Rep., 737, and authorities cited.

The law is strict in its requirements that the claimant shall make it to clearly appear that he has a lien; but when that appears, remedial laws for its enforcement are to be liberally construed. *Thompson* v. *Baxter,* 92 Tenn., 305, 21 S. W., 668, 36 Am. St. Rep., 85.

There can be no serious doubt that the York Lumber & Manufacturing Company, and others so adjudged by the chancellor to have had liens, did have liens upon the property of the hotel company prior to the adjudication and discharge in bankruptcy of the construction company. It is also true that these liens had been in force for more than four months before such adjudication of the principal contractor. It is also true that until such adjudication of bankruptcy all parties then necessary were before the chancery court.

Now the question for consideration is, What was the effect of such adjudication and discharge upon said liens?

Clause D, section 67, of the last Bankrupt Act, is as follows:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall . . . not be affected by this act."

Section 16 of the act is as follows:

"The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt, shall not be altered by the discharge of such bankrupt."

We quote from volume 3 of Remington on Bankruptcy, the following sections:

"Sec. 2668. Discharge Bars Debts, Not Enforcement of Liens or Title to Property.—In actions to try the title to property, or to determine the validity of liens on property, or interest therein, where no recovery of a debt is sought, the defendant may not interpose his discharge in bankruptcy—discharge bars debts, not ownership of property, whether such ownership of the whole or merely partial ownership."

"Sec. 2672. Debt Not Extinguished but its Enforcement Barred.—Discharge is not a payment nor extinguishment of debts; it is simply a bar to their enforcement by legal proceedings.

"Sec. 2673. Valid Liens Not Cast Off nor Their Enforcement Prevented.—The discharge does not operate to cast off good and valid liens given or acquired for the debts, either liens by contract or by legal pro-

ceedings, nor to prevent their enforcement. It is purely personal to the bankrupt.''

''Sec. 2712. And Where Judgment Necessary to Perfect Rights against Surety, or Property.—Likewise, where a creditor's rights against a surety are dependent upon his getting judgment against the bankrupt principal, it would seem a proper exercise of discretion to permit proceedings to be instituted, or pending proceedings to be prosecuted to judgment, for the purpose of fixing the surety's liability.''

We believe that Congress in the passage of the bankrupt act had due regard for all vested rights, valid liens, and securities, and that there was no intention on its part to destroy or impair the obligation of contracts, fixing liens or securities valid under the State laws. The language of the act is very broad, and evidences the purpose of Congress to protect all liens and securities of every kind; and, while the liens referred to have reference, no doubt, to liens upon the property of the bankrupt, yet the second clause quoted above is quite broad enough to cover the lien in this case against the property of the hotel company.

The intention of Congress to preserve liens and securities of the creditors of the bankrupt, which liens and securities are not given in fraud of the act itself, is clearly shown by clause D of section 67, supra. The purpose of the act, as we believe, was to give the bankrupt personal immunity from his debts, but to leave intact all securities, liens, and valid attachments

which existed prior to the bankruptcy in favor of creditors of the bankrupt.

· The case of *Holland* v. *Cunliff,* was a mechanic's lien case, decided in the court of appeals of Missouri, August 6, 1902, and reported in 96 Mo. App., 67, 69 S. W., 737. The facts of that case are that Holland, the plaintiff, contracted to do certain work for the defendants Cunliff, in constructing improvements upon property belonging to them. After he had begun his work, part of the property was sold to defendant Mrs. Langan, and he continued with his work and completed it. He then filed suit to enforce his lien on the property. Subsequent to filing the suit, the Cunliffs filed their petition in bankruptcy, and were granted a discharge, which discharge was pleaded as a bar to plaintiff's lien, as is done in this suit. The court held that the discharge of the Cunliffs, the principal debtors, did not defeat the plaintiff's lien upon the property. In that case the court said:

"It appears to us that the true construction of the bankrupt act itself must be held to preserve the force of a lien such as here appears to have been perfected, by every proper step except a final judgment, more than four months before the bankruptcy proceedings began. Another feature of the . . . bankrupt law indicates how strictly personal the discharge thereunder is intended to be. We refer to the provision which declares that 'the liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt, shall not be altered by the discharge

of such bankrupt.' Section 16. The words 'in any manner a surety for bankrupt' are of wide scope. Their intent appears to be to make the discharge personal to the debtor, and to eliminate the general effect which would follow the release of the debt by the act of the parties, under the principles of common law. . . . The drift of all these rulings is to sustain the judgment here, in the circumstances confronting the court. The original debtors were made parties to this action. No personal judgment was entered against them because of their discharge from personal liability by force of the bankrupt act, but the lien affixed by their actions upon the property was not divested by their discharge, which had no larger effect than to release their personal liability.

"The principle on which this result must rest is that a discharge in bankruptcy does not extinguish the debt, but merely confers a personal immunity from the enforcement thereof. Hence any valid lien, already imposed on property to secure the debt, at the time when the bankruptcy proceeding became effective, continues in undiminished vigor, unless the bankrupt law itself or our own positive law abates it. The lien in question here is not of that class. The Missouri statutes fully sustain it, and the federal law does not impair it."

In the case of *Eberle* v. *Drennan,* decided December 3, 1912, by the supreme court of Oklahoma, 40 Okl., 59, 136 Pac., 162, 51 L. R. A. (N. S.), 68, among other things the court said:

"It is insisted by plaintiffs in error: First, that by and on account of the bankruptcy of the original contractor, the claims for liens against the property of these plaintiffs in error on the part of the subcontractors and materialmen were wiped out; that there is but one debt, which is the debt of the contractor, and when this is settled, either by payment or bankruptcy, the foundation for the lien fails, and to support this claim cite the case of *Pike Bros. Lbr. Co.* v. *Mitchell,* 132 Ga., 675, 64 S. E., 998, 26 L. R. A. (N. S.), 409; and some other cases from that jurisdiction. Counsel for the lien claimants, as against this contention, cite, among others, the following authorities: *Re Huston,* 7 Am. Bankr. Rep., 92; *Crane Co.* v. *Pneumatic Signal Co.,* 42 Misc. Rep., 338, 86 N. Y. Supp., 711, Id., 94 App. Div., 53, 87 N. Y. Supp., 917, 11 Am. Bankr. Rep., 747; *Re Grissler,* 136 Fed., 754, 69 C. C. A., 406, 13 Am. Bankr. Rep., 508—to support the proposition that an adjudication of bankruptcy of the original contractor does not cut off the right of a subcontractor or materialman to file and enforce his lien against the owner's land; and, in our judgment, it was not the intention of the legislature in its passage of the Mechanic's Lien Act to provide that the insolvency or bankruptcy of the principal contractor should defeat the claims mentioned. . . . It is true section 6156, Compiled Laws of 1909, provides that the original contractor shall be made a party defendant in all such actions, and it is further true that where he has become a bankrupt, he cannot be sued and the

liability enforced personally against him, but the very purpose of the act is to subject the property of the owner to the payment of the debts incurred by the original contractor when he does not pay them himself, and it would be a strange anomaly if, when that very condition arises' and the original contractor availed himself of the bankruptcy statute, the law which was made to protect such of his creditors would then, when needed most, wholly fail. When the owner begins to construct his building, engages his contractor, and the contractor purchases material or employs laborers, they all act with this statute in view, and with the knowledge on the part of all that the liability of the original contractor to materialmen and laborers within the scope of his contract may, on his failure to meet it, be enforced against the property.''

It is earnestly insisted in argument, and in the able brief for appellants, that judgments for the claims could not be had against the contractor because of its adjudication in bankruptcy, and therefore the materialmen and subcontractors cannot foreclose their liens against the property improved. It is insisted that the rule announced by this court in the cases of *Warner* v. *Yates,* 118 Tenn., 548, 102 S. W., 92, and *Luttrell* v. *Railroad,* 119 Tenn., 492, 105 S. W., 565, 123 Am. St. Rep. 737, is that, in a suit by a subcontractor to enforce a mechanic's lien, the principal contractor is a necessary party, because the action cannot be maintained without establishing both the debt and

the lien, and that the owner is entitled to be furnished with an adjudicated claim, not an open account. It is further insisted that, because of the adjudication in bankruptcy of the principal contractor, not even a qualified judgment can be given against him so as to enable the lien claimant to proceed to enforce his lien.

The leading case in the United States upon this question is *Hill* v. *Harding,* 130 U. S., 699, 9 Sup. Ct., 725, 32 L. Ed., 1083, wherein it was said:

"The question not then passed upon, and now presented, is whether, since he (the defendant) has obtained his discharge in bankruptcy, there is anything in the provisions of the bankrupt act to prevent the State court from rendering judgment on the verdict against him, with a perpetual stay of execution, so as to prevent the plaintiffs from enforcing the judgment against him, and leave them at liberty to proceed against the sureties in the bond or recognizance given to dissolve an attachment made more than four months before the commencement of the proceedings in bankruptcy. Such attachments being recognized as valid by the bankrupt act (Rev. Stat., 5044) a discharge in bankruptcy does not prevent the attaching creditors from taking judgment against the debtor in such limited form as may enable them to reap the benefit of their attachment. . . . The judgment is not against the person or property of the bankrupt, and has no other effect than to enable the plaintiff to charge the sureties, in accordance with the express terms of their contract, and with the spirit of that

provision of the bankrupt act which declares that 'no discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise.' ''

The clause in the present bankrupt act of 1898, quoted supra, in this opinion, is broader in its terms with referencee to the liability of sureties upon the discharge of a bankrupt than the one referred to in the opinion of *Hill* v. *Harding.* See, also, *Wolf* v. *Stix,* 99 U. S., 1, 25 L. Ed., 309.

*Hill* v. *Harding,* supra, although construing a former bankruptcy act, is quoted approvingly by the supreme court of Rhode Island in a decision rendered July 7, 1911, construing the present bankruptcy act, in the case of *Butterick Publishing Company* v. *Bowen,* 33 R. I., 43, 80 Atl., 278, where, among other things, it was said:

"We are of the opinion, however, that the better position is one which preserves to the bankrupt the full benefit of his discharge, and at the same time does not deprive the creditor of the advantage which the bankruptcy law permits him to have by reason of his attachment made more than four months before the commencement of bankruptcy proceedings. This position, more in accord with reason and justice, as it seems to us, is supported by the weight of authority.''

In the case of *U. S. Wind, Engine & Pump Co.* v. *N. Penn. & Iron Co.,* the supreme court of Pennsylvania, in a decision rendered February 21, 1910, 227

Pa., 262, 75 Atl., 1094, approved and followed *Hill* v. *Harding,* supra.

In the case of a bankrupt corporation, the bankruptcy act does not restrain a creditor, who has not proved his claim in bankruptcy, from prosecuting an action to judgment, for the purpose of enforcing his lien upon the property attached, or of charging officers or stockholders who are liable for the debts of the corporation.  *Chamberlin* v. *Hugenot Mfg. Co.,* 118 Mass., 532; *New Lamp Chimney Co.* v. *Ansonia Brass & Copper Co.,* 91 U. S., 656, 23 L. Ed., 336; *Munson* v. *Boston, Hartford & Erie R. R. Co.,* 120 Mass., 81, 21 Am. Rep., 499.

In the case of *Powers Dry Goods Co.* v. *Nelson,* 10 N. D., 580, 88 N. W., 703, 58 L. R. A., 770, decided in November, 1901, among other things it was held that:

"The lien of an attachment on personal property of a bankrupt is not destroyed by a mere discharge . . . under the present national bankruptcy act; and unless such lien is one which is itself declared void by said act, it may be enforced, through a modified form of judgment, as against the property on which the lien exists."

We might cite many more cases, but do not deem it necessary.

Learned counsel for appellants have cited and relied upon the case of *Pike Bros. Lbr. Co.* v. *Mitchell,* 132 Ga., 675, 64 S. E., 998, 26 L. R. A. (N. S.), 409, and certain other cases which seem to have either followed or been founded upon the rule therein an-

nounced. We do not believe that the weight of authority sustains these cases. Neither do we think the rule therein stated to be founded upon reason or justice.

The rule laid down in *Pike Bros. Lumber Co.* v. *Mitchell,* supra, and other cases, was referred to in the case of *Eberle* v. *Drennan,* supra, but the supreme court of Oklahoma declined to follow the Georgia cases. See the many other authorities cited under the latter case sustaining the true rule.

We believe that the necessary requirements as announced by this court in *Warner* v. *Yates* and *Luttrell* v. *Railroad Co.,* supra, have been fully met by the lien claimants in these suits. They filed their bills after giving notice against the principal contractor and the landowner, and were proceeding to judgment when the principal contractor was adjudged a bankrupt. The matters of account had been referred to the clerk and master by the chancellor, and he had made a report. This report is not in the record, but the record shows that the only exception by the contractor and hotel company to the claim of the York Lumber & Manufacturing Company was as to the question of interest allowed.

It appears that under the proceedings had in this cause the necessary parties were before a court of equity for a settlement of all questions; that the trustee in bankruptcy came into court, by authority of the bankrupt court, and entered into a stipulated agreement, upon which a consent decree was founded,

giving judgment against the hotel company in favor of the principal contractor; the bankrupt; that by the terms of this consent decree, the proceeds of said judgment were not to go into the bankrupt court, but were to be distributed among the lienholders. The bankrupt was before the chancery court, and his trustee in bankruptcy came into that court with express authority to have an adjudication, morever to waive, and he did waive, the right of that court to take jurisdiction of the assets of the bankrupt, to wit, the debt due from the hotel company.

Then why can it be, after all this, that these lienholders should be compelled to follow the trustee and the bankrupt back into the bankrupt court in order to adjust their respective claims? They were not seeking any of the bankrupt's property. The amount due from the hotel company to the bankrupt, by the action of the trustee, was left under the jurisdiction of the chancery court.

Suppose that we should hold these lienholders not entitled to the $19,000 already adjudged by a consent decree to be due from the hotel company to the Construction Company, what would become of this fund? The trustee in bankruptcy has disclaimed his rights to it. Could it be held that the hotel company was entitled to this judgment against itself, and that, too, after it had come into a court of equity, asking equity, and stating in its bill that if there were any valid claims against it that it wished them paid?

Hotel Co. v. Construction Co.

It is remarkable that the hotel company, after consenting to the rendition of a judgment against it, and the contractor, after it and its trustee in bankruptcy had disclaimed their right to this judgment, should combine and fight as earnestly as they have. Why is it that the guaranty company, upon whom it seems the loss must fall, has made no complaint? The case in its entirety does not appeal to us as one having much equity in favor of the hotel company and the Barker Construction Company.

We hold that the action of the chancellor in rendering qualified judgments in favor of the eleven lien holders, without requiring them to go into the bankruptcy proceeding, was correct, and that he was also correct in decreeing that, unless these claims were paid as required, they would be entitled to have their liens foreclosed by a sale of the property, and his decree is affirmed in all things in so far as the eleven claimants against whom appeals were prayed are concerned. This decree will inure to the benefit of any other creditors who may, by decree of this court on appeal, be given liens in other cases. The costs of the appeal will be paid by the hotel company and of the writ of error by the construction company.